# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 3, 2003 Session

## TONY WILLIS Et Al.  v.  TENNESSEE DEPARTMENT OF CORRECTION

**Appeal by permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 99-3332-III     Hon. Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-01397-SC-R11-CV - Filed August 27, 2003**

---

The issue in this case is the proper standard to be applied to motions to dismiss petitions for common-law writ of certiorari in prison disciplinary proceedings.  This appeal involves a prisoner who was charged with and convicted of the disciplinary violation of attempted escape.  The prisoner filed a petition for a common-law writ of certiorari in the Chancery Court for Davidson County challenging the action of the disciplinary board arguing that it was illegal, arbitrary, and excessively punitive.  The chancery court granted the Department of Correction's motion to dismiss for failure to state a claim because the process provided to the petitioner was commensurate with the sanctions imposed upon him, and therefore, there was no violation or deprivation of due process.  The majority of the Court of Appeals affirmed the trial court's judgment, with Judge Koch dissenting.  We granted Petitioner's request for permission to appeal, and after conducting our own de novo review of the record, we hold that the petitioner did state a claim for relief under the common-law writ of certiorari because his petition alleged that the disciplinary board failed to follow its own disciplinary guidelines and that the petitioner was substantially prejudiced thereby.  At the same time, we agree with the Department of Correction that the petitioner did not state a claim for relief under the due process clause of the United States Constitution or the Tennessee Constitution.  Accordingly, the decision of the Court of Appeals is reversed in part, affirmed in part, and the case is remanded to the trial court for further proceedings.

**Tenn. R. App. P. 11 Application for Permission to Appeal;  Judgment of the Court of**
**Appeals is affirmed in part and reversed in part**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J.,
E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

1

Brian Dunigan,[1] Goodlettsville, Tennessee, for the appellant, Edward Tharpe.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General, for the appellee, Tennessee Department of Correction.

## OPINION

## FACTUAL BACKGROUND

The appellant, Edward Tharpe, is a prisoner at the Turney Center Industrial Prison and Farm. He and his cellmate, Tony Willis, were convicted of the disciplinary offense of attempted escape, based on the discovery of a pair of pliers in their cell and on information provided by a confidential informant. The disciplinary board punished them each with a thirty-day sentence of punitive segregation, involuntary administrative segregation, and a five-dollar fine. Tharpe and Willis appealed to the Warden, who upheld the decision of the disciplinary board. Petitioners thereafter appealed to the Commissioner of the Tennessee Department of Correction, who agreed with the Warden's affirmation of the decision.

Having exhausted their administrative remedies, Tharpe and Willis filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County, seeking judicial review and reversal of their convictions. In their joint petition, they alleged that they were not given sufficient notice of the charges against them prior to the hearing; they were not given access to exculpatory evidence; and the disciplinary board did not independently assess the credibility of the confidential informant upon whose testimony it relied in convicting the petitioners. The petitioners alleged that because these actions were in violation of the Department of Correction Uniform Disciplinary Proceedings, their convictions were illegal and arbitrary.

The Attorney General, on behalf of the Department of Correction (Department), filed a motion to dismiss for failure to state a claim upon which relief can be granted. A second motion to dismiss, with an attached memorandum of law,[2] was filed on February 25, 2000, because the first motion was not accompanied by a memorandum of law.

---

[1] The Court expresses its gratitude to counsel for the appellant for accepting our appointment in this case without compensation.

[2] The Attorney General's motion simply asserted that the petition should be dismissed "[p]ursuant to Tenn. R. Civ. P. 12.02(1) and (6)." This motion fails to meet the basic requirements of Tennessee Rule of Civil Procedure 7.02(1) which requires that motions must "state with particularity the grounds therefor." For the purposes of a Tennessee Rule of Civil Procedure 12.02(6) motion, the moving party must state in its motion why the plaintiff has failed to state a claim for which relief can be granted. Including the grounds for a Rule 12.02(6) motion in a separate memorandum of law does not comply with Rule 7.02(1). It is unclear why the Clerk and Master included this memorandum of law in the appellate record in light of Tennessee Rule of Appellate Procedure 24(a)'s language that trial briefs and counsel's memoranda of law are not part of the record on appeal.

2

The Chancery Court granted the Department's motion to dismiss, finding that the petitioners failed to state a claim for which relief is available through a common-law writ of certiorari because the punishments they received "are not atypical in relation to the ordinary incidents of prison life." Based on the "undisputed facts of record," the court also concluded that "the process provided to the petitioners to contest and defend against disciplinary sanctions was commensurate with the sanctions imposed on them and, therefore, there was no violation or deprivation of due process."

Tharpe appealed the decision of the Chancery Court.[3] Relying on Sandin v. Conner, 515 U.S. 472 (1995), the majority of the Court of Appeals determined that Mr. Tharpe's petition failed to state a claim upon which relief can be granted because the punishment received was not harsh enough to amount to the imposition of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Judge Koch dissented, arguing that the majority's reliance on Sandin was misplaced.

Before this Court, Tharpe argues that he is entitled to relief because the disciplinary board acted arbitrarily and illegally by failing to comply with its own procedural rules and thereby denied him his day in court. He also argues that the board deprived him of a property interest that was protected by the Due Process Clauses of the United States Constitution and the Tennessee Constitution. The Appellee asks us to uphold the decision of the trial court and its reliance on Sandin v. Conner.

We agree with Tharpe that his petition did state a claim for relief under the common-law writ of certiorari. However, we also conclude that his petition did not state a claim for deprivation of due process under either the federal or state constitutions. Therefore, for the reasons contained herein, the decision of the Court of Appeals is affirmed in part, reversed in part, and the case is remanded for further proceedings.

**STANDARD OF REVIEW**

The sole purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999); Riggs v. Burson, 941 S.W.2d 44, 47 (Tenn. 1997). When reviewing a dismissal of a complaint under Rule 12.02(6), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. See, e.g., Doe v. Sundquist, 2 S.W.3d at 922. Because a motion to dismiss a complaint under Rule 12.02(6) challenges only the legal sufficiency of the complaint, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See, e.g., Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 696 (Tenn. 2002).

---

[3] While both Mr. Tharpe and Mr. Willis filed a notice of appeal, only Mr. Tharpe filed a brief with the Court of Appeals. Accordingly, Mr. Willis's appeal was dismissed in accordance with Tennessee Rule of Appellate Procedure 29(c).

**DISCUSSION**

DUE PROCESS

In his petition for common-law writ of certiorari, Tharpe alleged that the prison disciplinary board failed to follow the rules in the Uniform Disciplinary Procedures, and, as a result, his conviction for attempted escape was illegal and arbitrary. Instead of allowing Tharpe relief under the common-law writ of certiorari, the Court of Appeals determined that Tharpe had failed to state a claim for violation of his due process rights under the United States Constitution and the Tennessee Constitution. The Court of Appeals relied upon Sandin v. Conner to hold that Mr. Tharpe's petition failed to state a claim upon which relief can be granted because the punishment he received was not harsh enough to amount to the imposition of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.[4] Consequently, a claim of denial of due process must be analyzed with a two-part inquiry: (1) whether the interest involved can be defined as "life," "liberty" or "property" within the meaning of the Due Process Clause; and if so (2) what process is due in the circumstances. See Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972); Rowe v. Bd. of Educ., 938 S.W.2d 351, 354 (Tenn. 1996). Deprivation of an interest which is neither liberty nor property does not trigger the procedural safeguards of the Due Process Clause. See Sandin, 515 U.S. at 483-84; Rowe, 938 S.W.2d at 354.

The United States Supreme Court has addressed, on several occasions, the issue of when a prisoner is deemed to have been deprived of a liberty interest. In Sandin, the Court held that a liberty interest is not created unless the disciplinary restraints being imposed on a prisoner are atypical in comparison to the "ordinary incidents of prison life." Sandin, 515 U.S. at 483-84. In that case, the Court held that thirty days of punitive segregation was not a dramatic departure from the basic conditions of the prisoner's indeterminate sentence, and therefore, the prisoner was not entitled to due process protection. Sandin, 515 U.S. at 486.

Thus, pursuant to Sandin, we find that Tharpe was not deprived of a liberty interest when he was punished with punitive and administrative segregation. However, Tharpe argues that Sandin does not control the outcome of this case because unlike the prisoner in Sandin, he was not only punished with segregation, but was also assessed a monetary fine of five dollars.

---

[4] We have previously held that Article I, section 8 of the Tennessee Constitution, which provides that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land," is synonymous with the "due process" provisions of the federal constitution. See State v. Hale, 840 S.W.2d 307, 312 (Tenn. 1992); State ex rel. Anglin v. Mitchell, 596 S.W.2d 779, 786 (Tenn. 1980). Therefore, we will address the federal and state due process claims together.

4

State prisoners in Tennessee have a property interest in the funds in their prison trust fund accounts. Jeffries v. Tenn. Dep't of Corr., 108 S.W.3d 862, 872 (Tenn. Ct. App. 2002); see also Hampton v. Hobbs, 106 F.3d 1281, 1287 (6th Cir. 1997) (holding that prisoners have a protected interest in their money). It would follow, therefore, that the imposition of a monetary fine to be paid from that trust fund account would constitute a deprivation of a property interest. If a property interest has been implicated, we must then determine what process is due under the circumstances. The answer to that question is situational because due process is a flexible concept that calls for only those procedural protections that the particular situation demands. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976); Wilson v. Wilson, 984 S.W.2d 898, 902 (Tenn. 1998); Phillips v. State Bd. of Regents of State Univ. & Cmty. Coll. Sys. of Tenn., 863 S.W.2d 45, 50 (Tenn. 1993).

Three factors must be considered in determining the procedural protections demanded by a particular situation:

> (1) the private interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

State v. Culbreath, 30 S.W.3d 309, 317-18 (Tenn. 2000) (citing Wilson, 984 S.W.2d at 902); see also Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (recognizing the need for "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application").

The relative weight of a property or liberty interest is relevant to the extent of due process to which one is entitled. However, where the interest is truly de minimis, procedural rights can be dispensed with altogether. See Goss v. Lopez, 419 U.S. 565, 576 (1975); Carter v. W. Reserve Psychiatric Habilitation Ctr., 767 F.2d 270, 272 n.1 (6th Cir. 1985) (two day suspension was considered "*de minimus* and not deserving of due process consideration").

In the case under consideration, Tharpe was fined five dollars, to be paid from his prison trust account. The government's interests, including fiscal and administrative burdens of providing additional process, outweigh the petitioner's interest in his five dollars. The de minimus nature of the fine makes it immune from procedural due process requirements. At the very least, the amount of the fine certainly does not warrant any more process than Tharpe actually received.[5] For these reasons, Tharpe failed to state a claim for violation of his due process rights.

## COMMON-LAW WRIT OF CERTIORARI

---

[5] While Tharpe's petition challenges the amount of process he received, there is no dispute that he received some process, in that he did receive a hearing and was allowed to testify on his own behalf.

The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. See Rhoden v. State Dep't of Corr., 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing Bishop v. Conley, 894 S.W.2d 294 (Tenn. Crim. App. 1994)). By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief.

A common-law writ of certiorari limits the scope of review to a determination of whether the disciplinary board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. Turner v. Tenn. Bd. of Paroles, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); South v. Tenn. Bd. of Paroles, 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996). The petition does not empower the courts to inquire into the intrinsic correctness of the board's decision. Arnold v. Tenn. Bd. of Paroles, 956 S.W.2d 478, 480 (Tenn. 1997); Robinson v. Traughber, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999). Previously, we have specifically approved the use of a common-law writ of certiorari to remedy (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion. State v. Willoughby, 594 S.W.2d 388, 392 (Tenn. 1980).

Here, Tharpe alleges that the prison disciplinary board's proceeding was inconsistent with essential legal requirements, in that it failed to follow the Tennessee Department of Correction Uniform Disciplinary Procedures. Because the Department chose to proceed under a Rule 12.02(6) motion to dismiss, we must accept as true the allegations set forth by Tharpe in his petition and presume that the disciplinary board failed to comply with the Uniform Disciplinary Procedures as set forth below.

The Uniform Disciplinary Procedures exist "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy No. 502.01(II). While it "is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required," deviations from the policy will warrant dismissal of the disciplinary offense if the prisoner demonstrates "some prejudice as a result and the error would have affected the disposition of the case." TDOC Policy No. 502.01(V).

A prisoner seeking judicial review of a prison disciplinary proceeding states a claim for relief under common-law writ of certiorari if the prisoner's complaint alleges facts demonstrating that the disciplinary board failed to follow the Uniform Disciplinary Procedures and this failure substantially prejudiced the petitioner. Thus, for Tharpe to survive a motion to dismiss, his petition must allege that the disciplinary board followed an unlawful procedure and that he was substantially prejudiced thereby.

First, Tharpe alleges that he and Willis were not provided with adequate notice of the charges against them. The Uniform Disciplinary Procedures provide that prisoners are entitled to notice of their disciplinary infraction by receiving written notice of the charges at least twenty-four hours

6

before the hearing with the disciplinary board. TDOC Policy No. 502.01(VI)(A)(3)(c), (VI)(D)(3)(b). It is unclear from the petition to what extent, if any, the petitioners received notice of the charges against them.[6] The petition states that "there was no specific statutory provision of Tennessee law or Tennessee Department of Correction . . . Policy alleged or cited in the disciplinary reports in order to properly place Petitioners on notice of the specific provision of law or regulation they allegedly violated." If the petitioners received no notice of the charges against them, this would be patently prejudicial; if they did receive notice, but that notice was somehow defective, its prejudicial nature would depend on the particular shortcomings of the challenged notice.

Second, Tharpe asserts that he was prevented from obtaining and introducing relevant "exculpatory" evidence. If true, this conduct would be contrary to the prisoners' qualified right to introduce evidence and call witnesses in disciplinary proceedings. Tennessee Department of Correction Policy Number 502.1(VI)(E)(2)(c)(6) provides that an "inmate shall be permitted to present the testimony of relevant witness(es), unless allowing a witness to appear would pose a threat to institutional safety or order." Policy Number 502.1(VI)(E)(2)(c)(3) provides that a prisoner in a disciplinary hearing "will be allowed to cross-examine any witness (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information)."

The evidence sought to be admitted by the petitioners related to the chain of custody of the pair of pliers that were found in the petitioners' cell. Presuming the truth of the facts alleged in the petition, this evidence was certainly relevant and could have affected the outcome of the proceeding.

Finally, Tharpe alleges that the disciplinary board did not independently assess the credibility of the confidential informant upon whose testimony apparently formed part of the basis for finding him guilty of attempted escape.[7] If substantiated, this would be a departure from the Uniform Disciplinary Procedures, which require the chairperson to independently "assess and verify the reliability of the informant's testimony" and, when the information provides a basis for the board's decision, "to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant's information was reliable." TDOC Policy No. 502.01(VI)(E)(2)(e). Compliance with this procedure promotes the reliability of prison disciplinary proceedings because prisoners may be denied the opportunity to confront and cross-examine their accusers when prison officials are concerned about reprisals or other security issues. Failing to independently verify the credibility of the confidential informant could easily have prejudiced both Mr. Tharpe and Mr. Willis because they could have been convicted of a serious disciplinary offense based on false or unreliable evidence.

---

[6] In his pro se brief to the Court of Appeals, petitioner Tharpe stated that he was issued a "disciplinary infraction report" for the alleged offense of "Attempted Escape" and attached a copy of this report to his brief. However, this report is not part of the appellate record because it was not introduced in the trial court. We cannot take judicial notice of materials appended to briefs that are not properly part of the record on appeal.

[7] Tharpe asserts that this informant was another prisoner who "concocted" the escape story to induce the prison officials to drop drug possession charges that were pending against him.

The Uniform Disciplinary Procedures provide the principal means of ensuring that disciplinary proceedings are fair, reliable, and impartial. The integrity of disciplinary systems is important to the stability of a corrections program. If the Tennessee Department of Correction were to violate its own policies to such a degree that it administered punishment without a reliable determination of guilt, such a violation would be without legal authority and an abuse of discretion. Accordingly, we hold that the petition states a cause of action with respect to its allegations that the disciplinary board violated its own rules and policies and that the petitioner was substantially prejudiced thereby. On these allegations, a common-law writ of certiorari shall issue.

## CONCLUSION

In summary, we find that the facts in Tharpe's petition, which we are required to accept as true, fail to state a cause of action for due process violations under either the United States Constitution or the Tennessee Constitution. We also hold, however, that Tharpe's petition did state a claim upon which relief can be granted under common-law writ of certiorari. Tharpe alleged that the disciplinary board's actions deviated substantially from the procedures set forth in the Tennessee Department of Correction Uniform Disciplinary Procedures and that those actions substantially prejudiced the outcome of the hearing. Because this is an appeal of a grant of a motion to dismiss, we must assume that the allegations are true and cannot address the merits of Tharpe's allegations. Therefore, the case is remanded to the trial court, where the court will issue the writ of certiorari directing the Department to file the record. The court will then address the substance of Mr. Tharpe's claims in light of the record of the proceedings.

The judgment of the Court of Appeals is reversed, and costs on appeal are taxed to the appellee, Department of Correction.

_____
WILLIAM M. BARKER, JUSTICE

8