IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs June 30, 2005

## JAMES W. CLARK v. JIM ROSE

**A Direct Appeal from the Chancery Court for Lauderdale County**
**No. 11,487     The Honorable Martha B. Brasfield, Chancellor**

---

**No. W2004-02744-COA-R3-CV - Filed August 1, 2005**

---

Petitioner/Appellant is an inmate in the custody of the Tennessee Department of Correction. This is the second appeal before this Court arising from the Appellant's filing of the underlying *pro se* petition for common law writ of certiorari, seeking review of the procedures used by the Tennessee Department of Correction in reaching its decision to keep Appellant confined in administrative segregation. This Court initially remanded the case to the trial court for a determination of whether the inmate's status was punitive or non-punitive in nature. Upon remand, the trial court determined that his status was non-punitive. Inmate appeals. Finding that the trial court did not abuse its discretion in its determination that inmate's status was non-punitive and that, as such, the common law writ of certiorari was not the proper means of challenging his status, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

James W. Clark, Jr., Pro Se

Paul G. Summers, Attorney General and Reporter; Jennifer R. Bailey, Assistant Attorney General for Appellee, Jim Rose

## OPINION

James W. Clark ("Petitioner," or "Appellant") is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). Jim Rose ("Respondent," or "Appellee") is the former Assistant Commissioner for Operations of the TDOC. By order of the warden, Mr. Clark was placed in Involuntary Administrative Segregation ("AS") in September, 1997. Mr. Clark initially filed a "Petition for Writ of Certiorari" (the "Petition") on February 10, 2000, seeking judicial review of the procedures used by the TDOC in reaching its decision to keep Mr. Clark confined in AS. Mr. Rose

was apparently never served and, consequently, failed to respond to Mr. Clark's Petition. Mr. Clark then filed a motion for default judgment on May 22, 2000. On June 21, 2000, Mr. Clark filed a motion to show cause and request for ruling with the trial court. On August 7, 2000, Mr. Clark filed a writ of Mandamus with this Court, which was denied by Order dated April 10, 2001. The trial court filed its Order of Dismissal on April 22, 2002, wherein it denied Mr. Clark's request for default judgment and dismissed his Petition, finding that a prisoner's security status or security classification cannot be determined or changed through a writ of certiorari because such determination is administrative, as opposed to judicial, in scope. Mr. Clark appealed that decision to this Court. By Order of February 5, 2003, this Court overturned the trial court's dismissal and remanded the case for a determination of whether Mr. Clark's AS status was punitive in nature thereby invoking certain rights. *See Clark v. Rose*, No. W2002-01245-COA-R3-CV, 2003 WL 21051737 (Tenn. Ct. App. Feb. 5, 2003) ("*Clark* I"). Specifically, this Court, in *Clark* I, held that:

> [a] writ of certiorari should issue requiring the Department to file the record of the proceedings at the administrative level. After the record is filed, the trial court shall conduct the appropriate judicial review. Such review will determine if the Appellant's stay in AS is truly punitive, thereby invoking the rights appurtenant to such a classification.

*Id*. at *8 (citations omitted).

Pursuant to this Court's holding in *Clark* I, on April 23, 2003, the Lauderdale County Chancery Court issued an order granting the writ of certiorari and ordering the TDOC to file Mr. Clark's records of disciplinary reports and AS reviews from September 19, 1997 through November 14, 2001. On June 23, 2003, the TDOC filed these records. After reviewing these records (through February 10, 2000–the date on which Mr. Clark's Petition was filed), the trial court entered an "Order of Dismissal" (the "Order") on July 30, 2003. The Order reads, in pertinent part, as follows:

> The records show that on September 19, 1997, while the Petitioner was incarcerated at Turney Center, he was charged with assault for stabbing a fellow inmate with a prison-made knife. A Disciplinary Report Hearing Summary dated September 22, 1997, which was signed by the Petitioner, indicates that the Petitioner pled guilty to the assault. In the section entitled "Statement of Accused," the Petitioner made the following statement (copied verbatim):
>
>> "Guilty Plea–I had to do what a man has to do. He was a snake and a snitch and he disrespected me. I tried to get him to stop and went to folks and they wouldn't do anything, so I did. I'm only sorry that he didn't die–because that's what I intended to do was kill him. I kept getting busted w/my dope and

everything pointed to him–and he questioned my dedication to B.G.D. organization which disrespected me. My folks would do anything, so I stuck him to show what happens when you do that. This was just between he and I."

The disciplinary board sentenced the Petitioner to 30 days of punitive segregation, imposed a $5.00 fine, recommended placement in involuntary administrative segregation, and loss of 9 months of good behavior credits. The board stated that the Petitioner "has demonstrated he is a threat to the Safety and Security of other Inmates, Staff, and this Institution." The warden approved the board's recommendation to place the Petitioner in administrative segregation. (See Involuntary Administrative Segregation Placement Report dated September 22, 1997.)

The record filed by the TDOC includes monthly Involuntary Administrative Segregation Review Reports from September 22, 1997, through February 10, 2000. The forms through March 16, 1998, contain statements made by the Petitioner, such as "I would like to be transferred," "I would like to go to Northeast, do not want to go west," and "want a job." TDOC comments on the forms state that this was the second time Petitioner had been given maximum security status, and that he had a history of disruptive/assaultive behavior. Thus, it appears that the Petitioner's continued placement in administrative segregation was reviewed on a monthly basis, that the reviews considered his disciplinary history, and that they included interviews with the Petitioner during which he was allowed to make statements. The forms also indicate that between December 11, 1997, and January 15, 1998, the Petitioner was transferred from Turney Center to the West Tennessee High Security Facility, where his placement in administrative segregation continued.

On April 4, 1998, the Petitioner was "written up" for refusing a drug screen and for possession of security threat group (gang-related) materials. At a disciplinary hearing on April 13, 1998, the Petitioner pled guilty to refusing the drug screen, and the disciplinary board found him guilty of possession of security threat material. He was sentenced to 20 days of punitive segregation, and his visitation was limited to clergy and attorneys for a period of one year.

On June 22, 1998, the Petitioner was charged with assaulting a staff member. The disciplinary report indicates that correctional

officers confiscated a notebook from the Petitioner's cell, and a scuffle ensued during which the Petitioner kicked one of the correctional officers in the head and right leg. The disciplinary board found him guilty of this charge on June 24, 1998, and sentenced him to 20 days of punitive segregation.

Administrative Segregation Review forms from September, 1998, through February, 1999, contain statements made by the Petitioner asserting that he was falsely charged for the assault on the correctional officers, and that his attitude and behavior were "fine." The administrative segregation review panel continued to recommend administrative segregation, and the recommendations were approved by the warden.

The review form for May, 1999, notes "11 months without infraction." The form dated June, 1999, notes "improving record of behavior" and "inmate works in unit library." Beginning in August, 1999, the Petitioner made comments that he posed no threat of violence, that his attitude and behavior were "high spirited," and that he wished to be released from administrative segregation to close security status. In December, 1999, the Petitioner noted, "Interview at cell door not as meaningful as meeting a panel. Counselor already made decision before seeing me." During all of these months, the panel recommended continued placement in administrative segregation.

## Findings

Based on a thorough review of the record, the Court finds that the Petitioner was held in administrative segregation for security reasons, and not as part of a disciplinary action. The Court notes that the Petitioner was serving a 135-year sentence for grand larceny, attempted felony larceny, two counts of <u>aggravated burglary</u>, three counts of theft of property, two counts of <u>attempted first degree murder</u>, two counts of <u>especially aggravated robbery</u>, and five counts of second degree burglary [emphasis in original]. The Petitioner's statement concerning the infraction which led to his placement in administration [sic] segregation is set out above. His later actions–possession [of] gang-related material and assaulting a correctional officer–are set out above. These actions were obviously considered by the persons who reviewed the Petitioner's administrative segregation status. It is obvious from the documentation entered that the persons reviewing his administrative

segregation status were aware of his day-to-day actions and attitude at the TDOC facilities where he was housed.

The Court finds that the Petitioner was afforded monthly reviews concerning his continued confinement in administrative segregation, that these reviews were conducted in accordance with TDOC policy, and that ample evidence exists which indicates that the Petitioner's continued confinement in administrative segregation was non-punitive in nature.

IT IS, THEREFORE, ORDERED, ADJUDGED, and DECREED, that the Petition for Writ of Certiorari should be, and is hereby, dismissed.

As noted by the trial court in of footnote to its Order, Mr. Clark's records concerning his AS status after February 10, 2000 (the date of the filing of his Petition) indicate that, in July 2000, a phase-down of Mr. Clark's security status (from Level III to Level II) was begun, with a goal of ultimately releasing Mr. Clark from AS. Mr. Clark was also given various jobs at the TDOC facility where he was housed. In January 2001, he was recommended to be placed at Level I; however, in February 2001, Mr. Clark was involved in a fight with another inmate and was returned to Level III status.

Mr. Clark appeals from the Order of the trial court and raises two issues as stated in his brief:

I. Whether the Appellee blatantly refused to allow the Appellant to have a meaningful review of his classification status as guaranteed by the statutes and Tennessee Department of Correction[] Policy, in violation of the 14th Amendment to the United States Constitution and Article[s] 1 and 8 of the Tennessee Constitution?

II. Whether the trial court erred by dismissing the Appellant's Complaint in violation of his 14th Amendment rights to [sic] the United States Constitution?

Here, as in his first appeal to this Court, Mr. Clark challenges the absence or sufficiency of a "meaningful review" of his AS status in alleged violation of the relevant Tennessee Statutes and the TDOC's own policies. However, since a prisoner lacks a liberty interest in "freedom from administrative segregation...which is non-punitive," *Woodruff v. Tenn. Dep't of Corr.*, No. M2001-00494-COA-R3-CV, 2002 WL 1974138 (Tenn. Ct. App. Aug. 28, 2002), before reaching Mr. Clark's stated issues, we must first review the trial court's determination of the nature (i.e. whether punitive or non-punitive) of Mr. Clark's AS. This review is necessary because, in Tennessee, "[t]he proper vehicle for challenging *a disciplinary action* is a petition for a common law writ of certiorari...." *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998)

(emphasis added). This is because "[a] prisoner ***disciplinary proceeding*** cannot be reviewed directly under the Uniform Administration Procedures Act because the Act removes such proceedings from the definition of a contested case." ***Id***. at 956 (citing T.C.A. § 4-5-106(b)) (emphasis added). However, as noted by this Court in ***Clark*** I, reviews of non-disciplinary actions fall under the review of the UAPA and, consequently, cannot be challenged by a common-law writ of certiorari, to wit:

> [T]he review being sought concerns the decision to keep the Appellant in AS, as opposed to his initial placement there. This decision does not involve the prison disciplinary board, only the administrative review panel. We fail to see how an administrative panel's review of a non-disciplinary action can amount to a disciplinary proceeding thereby removing it from the purview of the UAPA. Accordingly, we hold that... the common law writ is not "the appropriate vehicle" for challenging such an action.

***Clark***, 2003 WL 21051737 at *4.

As noted above, the trial court denied Mr. Clark's Petition for Writ of Certiorari based upon its finding that Mr. Clark's "...continued confinement in administrative segregation was non-punitive in nature." Since a writ of certiorari is not available as a matter of right, its grant or denial is within the sound discretion of the trial court. Such decision will not be reversed on appeal unless there is abuse of that discretion. ***Hall v. McLesky***, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001) (citing ***Boyce v. Williams***, 215 Tenn. 704, 389 S.W.2d 272, 277 (1965)).

We have reviewed the entire record in this case, including the Administrative Segregation Review Reports. The comments on these reports indicate that Mr. Clark has a history of assaults and disruptive behavior. Furthermore, while in AS, Mr. Clark has had several incidents that have resulted in disciplinary reports, including refusing a drug screen, possession of security threat material, and assault of a staff member. In addition, when Mr. Clark's security status was phased-down to Level I in January of 2001, he was returned to Level III status just one month later because of his involvement in a fight with another inmate. From the record as a whole, we find ample evidence from which the trial court could conclude that Mr. Clark's AS was based upon security concerns and not upon a punitive objective. Therefore, we find that the trial court did not abuse its discretion in finding that Mr. Clark's AS was non-punitive in nature and that, consequently, his Petition for Writ of Certiorari should be dismissed as such is not a proper vehicle for grievances arising from non-disciplinary actions. The specific issues raised by Mr. Clark are rendered moot by our findings herein.

For the foregoing reasons, we affirm the Order of the trial court dismissing Mr. Clark's Petition for Writ of Certiorari. Costs of this appeal are assessed against the Appellant, James W. Clark, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.