IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief November 1, 2006

# KENYALE PIRTLE v. TENNESSEE DEPARTMENT OF CORRECTION

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 5973     Joe H. Walker, III, Judge**

---

### No. W2006-01220-COA-R3-CV - Filed January 30, 2007

---

Upon review under common-law writ of certiorari, the trial court affirmed disciplinary actions against Petitioner/Appellant by the Tennessee Department of Correction. We affirm in part and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part;**
**and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Kenyale Pirtle, *Pro Se*.

Michael E. Moore, Acting Attorney General and Reporter, and Bradley W. Flippin, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

This appeal arises from review under common-law writ of certiorari of disciplinary proceedings at the West Tennessee State Penitentiary ("WTSP") in Lauderdale County. The Lauderdale County Circuit Court dismissed the writ upon determining that Petitioner, Kenyale Pirtle (Mr. Pirtle), an inmate at WTSP, had received adequate notice of the charges against him and that the WTSP Disciplinary Board had not acted outside its jurisdiction or arbitrarily, fraudulently, or illegally. Mr. Pirtle filed a timely notice of appeal to this Court. We affirm in part and remand for a determination of whether Mr. Pirtle's continued confinement in involuntary administrative segregation is punitive in nature.

### *Background*

This dispute arises from a March 6, 2005, assault against an inmate at WTSP. On March 14, 2005, Mr. Pirtle received a copy of a disciplinary report stating that an investigation of the assault

had confirmed that it was gang-related; that it was conducted by inmates who had been identified as being associated with a specific gang; and that confidential information confirmed that Mr. Pirtle was one of three assailants involved. The report stated that Mr. Pirtle was being charged with "participating in security threat group activities." After two continuances, on March 30, 2005, a three-member disciplinary board ("the Board") convened to hear the matter and found Mr. Pirtle guilty. The Board imposed a $5.00 fine and punitive segregation of twenty days. It also recommended involuntary administrative segregation. After exhausting administrative remedies, Mr. Pirtle petitioned the circuit court to issue a writ of certiorari directing the Tennessee Department of Correction ("the Department") to file a complete copy of the administrative record of the disciplinary proceedings and copy of Department policies 502.01 and 502.05 for review. In his petition, Mr. Pirtle asserted the Department had not provided him adequate and proper written notice of the charges; that the Department had "mishandled the confidential information presented at the hearing;" that the Department had failed to prove that he had participated in security threat group activities; and the Department had failed to record detailed reasons for the Board's decision and to summarize the evidence leading to that decision. He further alleged the Department continued to impose involuntary administrative segregation as a punitive measure in violation of the Department's internal policies and procedures.

On December 5, 2005, Mr. Pirtle filed a motion for default judgment asserting that process had been served upon the Department on June 22, 2005, and that the Department had failed to answer his petition. On April 11, 2006, the Department filed notice that it did not oppose the granting of Mr. Pirtle's petition for writ of certiorari and that, in accordance with Tennessee Code Annotated § 27-9-109, upon granting of the writ, it would prepare and certify the record of the disciplinary proceedings. The Department further stated that, in accordance with Tennessee Code Annotated § 27-9-110, it would respond to the merits of the petition within thirty days of filing the record. On April 26, 2006, the trial court granted Mr. Pirtle's petition and directed the Department to prepare and certify the records of the disciplinary proceedings. It further ordered the Department to respond to the merits of Mr. Pirtle's petition within thirty days from the filing of the record. The Department filed the record on May 4, 2006, and on May 5, 2006, the trial court entered its order dismissing Mr. Pirtle's petition. Mr. Pirtle filed a timely notice of appeal on May 31, 2006.

### *Issues Presented*

Mr. Pirtle presents the following issues for our review:

(1)     Whether the circuit court erred in concluding that the Department reached its decision in a lawful manner.

(2)     Whether the circuit court erred in not addressing Petitioner's entire petition.

(3)     Whether the circuit court erred in not addressing Petitioner's motion for default judgment.

(4)    Whether the circuit court erred in concluding that there is nothing in the record to indicate the administrative body acted illegal[ly], fraudulent[ly], arbitrar[ily], or outside its jurisdiction.

### *Standard of Review*

The common-law writ of certiorari is the procedural vehicle through which prisoners may petition for review of decisions by prison disciplinary boards and similar administrative boards and tribunals. *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)(citations omitted). "By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief." *Id.* The reviewing court may require that notice of the application be given to the adverse party, or it may grant the writ of certiorari without such notice. Tennessee Code Annotated § 27-9-108 (2000).

Review under a common-law writ of certiorari is limited to a determination of whether the disciplinary board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. *Willis*, 113 S.W.3d at 712. The reviewing court is not empowered "to inquire into the intrinsic correctness of the board's decision." *Id.* The Tennessee Supreme Court has held that a common-law writ of certiorari may be used to remedy "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Id.* (citing *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn.1980)). The reviewing court does not re-weigh the evidence, but must uphold the board's decision if the board acted within its jurisdiction and did not act illegally, arbitrarily, or fraudulently. A board's determination is arbitrary and void if it is unsupported by any material evidence. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980). Whether material evidence supports the board's decision is a question of law to be decided by the reviewing court based on the evidence submitted to the board. *Id.* at 277. Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). However, this Court's scope of review of the board's determination "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [b]oard." *Watts*, 606 S.W.2d at 277.

### *Analysis*

We first address Mr. Pirtle's assertion that the trial court erred in failing to rule on his motion for default judgment. We review a trial court's determination regarding entry of a default judgment under an abuse of discretion standard. *Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003). Additionally, Rule 55.04 of the Tennessee Rules of Civil Procedure provides that "[n]o judgment by default shall be entered against the State of Tennessee or any officer or agency thereof unless the claimant establishes the claim or right to relief by evidence satisfactory to the court." Tenn. R. Civ. P. 55.04. The granting of a writ, moreover, is not a "judgment"on the merits and, assuming the writ could be considered a "judgment," in order for the court to properly grant relief

by default judgment, the petitioner would be required to present "evidence satisfactory to the court" which "establishes the claim or right to relief." *Clark v. Rose*, No. W2002-01245-COA-R3-CV, 2003 WL 21051737, at *2 (Tenn. Ct. App. Feb. 5, 2003))(quoting Tenn. R. Civ. P. 55.04), *appeal after remand*, 183 S.W.3d 669 (Tenn. Ct. App. 2005).

In this case, although the trial court did not explicitly deny Mr. Pirtle's motion for default judgment, denial is implicit in the trial court's order granting the writ and ordering the Department to file the record. Further, the Department did not oppose the granting of the writ in this case, and the trial court ultimately decided the matter on its merits in accordance with the applicable standard of review. We find no abuse of discretion in the trial court's implicit denial of Mr. Pirtle's motion for default judgment.

We next turn to Mr. Pirtle's remaining issues, which we restate as whether the trial court erred in determining the Board did not act illegally, fraudulently, or arbitrarily. The purpose of the Uniform Disciplinary Procedures is "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 713 (Tenn. 2003)(quoting Tennessee Department of Correction Policy No. 502.01(II)). The procedures are "not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required." *Id.* (quoting Policy No. 502.01(V)). Deviations from the procedures, however, warrant dismissal of the disciplinary offense when the prisoner demonstrates "some prejudice as a result and the error would have affected the disposition of the case." *Id.* (quoting Department Policy No. 502.01(V)).

Mr. Pirtle submits the Board failed to provide him adequate notice of the charges against him in violation of Department policy 502.01. Mr. Pirtle's argument, as we understand it, is that the March 14, 2005, disciplinary report was defective where it charged him with "participating in security threat group activities" but described activities related to an assault. The disciplinary report stated:

> Results of an investigation have confirmed that an assault occurring on March 6, 2005 in Unit 3 B Pod was gang related. I/M . . . was assaulted by inmates who were identified as being associated with [Gang]. Confidential information confirmed the assailants as . . . and Kenyale Pirtle . . . . Those three are being charged with participating in security threat group activities.

The report, as we read it, clearly indicates that Mr. Pirtle was charged with a security threat group activity, that this activity was an assault of another inmate, and that the "group" was composed of the three assailants identified as gang members by confidential informants. We agree with the trial court that Mr. Pirtle received adequate notice of the charges against him.

Mr. Pirtle also submits that the Board acted in violation of Department disciplinary procedures where the Board Chairperson did not independently assess and verify the reliability of the alleged confidential informants. He further contends that the Contemporaneous Record of

Informant Reliability form ("CR-3510") filed with the record was dated March 28, 2005, two days prior to the disciplinary hearing, indicating that the Board had reached its decision prior to the hearing of the case. Mr. Pirtle's argument, as we perceive it, is that the CR-3510 was defective where it was completed two days prior to the hearing and that it demonstrates that the Board concluded he was guilty of the charges before hearing evidence.

As Mr. Pirtle asserts, the CR-3510 was signed and dated by the Board Chairperson on March 28, 2005. The Chairperson checked two of the four methods provided on the form for verification of informant reliability: (1) a sworn statement before the Board by the investigating officer that he/she believed the confidential informant to be reliable because the informant proved reliable in specific past instances and (2) a sworn statement before the Board by the investigating officer that he/she believed the confidential informant to be reliable because it has been independently corroborated on specific material points. The form also states, "Cpl. Ottinger provided the board with information that proved Kenyale Pirtle did take part in the assault . . . ." The form clearly indicates the methods used by the Chairperson to verify the confidential information. However, we note that the form states in the past tense that which the Chairperson anticipated investigating officer Ottinger would report and prove. Thus, we turn to whether the record indicates any prejudice or bias on the part of the Board against Mr. Pirtle.

The record indicates that Mr. Pirtle's hearing before the Board was continued twice at his request, first on March 17 and again on March 23. The transcript of the March 30 hearing before the Board demonstrates that Corporal Ottinger did in fact present the confidential information to the Board, that Mr. Pirtle was given the opportunity to testify and to cross-examine Corporal Ottinger regarding the confidential information, and that Mr. Pirtle was provided the opportunity to present evidence. The Disciplinary Report Hearing Summary ("the Summary"), dated March 30, 2005, states that the confidential information was introduced to and relied on by the Board, and that Mr. Pirtle was found guilty based on this information.

We find no prejudice in the Chairperson's pre-hearing assessment of the reliability of the confidential information. Further, in light of the totality of the record, we find no prejudice in this case resulting from the Chairperson's use of the past tense on the CR-3510 in light of the hearing and evidence presented to the Board. There is nothing in the record to indicate that the CR-3510 influenced the majority of the Board members, or that it was provided to them before the hearing.

We next turn to Mr. Pirtle's assertion that the Board failed to provide detailed reasons for its decision and failed to summarize the evidence leading to that decision. The Summary states only that the Board based its decision on the confidential information entered into evidence and on the testimony of the reporting official, Corporal Ottinger. Although we are not insensitive to the Department's need to safeguard confidential information and sources, we agree with Mr. Pirtle that the Summary fails to provide even basic details of Corporal Ottinger's testimony. The transcript of the hearing before the Board, however, contains the relevant substance of the confidential information, and Corporal Ottinger testified that the information was provided by three sources.

Having reviewed the entire record, we cannot say that Mr. Pirtle was prejudiced by the lack of detail in the Summary.

We next turn to Mr. Pirtle's assertion that the Board failed to prove his guilt. As noted above, this Court may not reevaluate the weight of the evidence presented to the Board, but must affirm the Board's decision if there is any material evidence to support it. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980). Corporal Ottinger's testimony and the confidential information provided to the Board constitute material evidence supporting the Board's decision.

Finally, we turn to whether the Department has continued to impose involuntary administrative segregation ("IAS") as a punitive measure in violation of the Department's internal policies and procedures. We begin our analysis of this issue by noting that Mr. Pirtle does not challenge the Board's initial decision to impose IAS, but the continued imposition of IAS. Because a prisoner does not have a liberty interest in freedom from non-punitive administrative segregation, before reaching this issue the appellate court must first review the trial court's determination of the nature of the IAS. *Clark v. Rose*, 183 S.W.3d 669, 673 (Tenn. Ct. App. 2005). This review is necessary because, although a common-law writ of certiorari is the correct vehicle for challenging a disciplinary action, review of a non-disciplinary administrative action falls under the purview of the Uniform Administrative Procedures Act and, therefore, cannot be challenged by a common-law writ. *Id.* (citations omitted).

The record in this case contains an Administrative Segregation Review signed by the Warden on April 11, 2005. The Warden approved the panel recommendation for continuing IAS "[d]ue to seriousness of placement offense and length." The interviewer wrote "no comment" in the space allocated for a summary of information presented by the inmate. Upon review of the trial court's order, we note that the trial court made no findings regarding whether the decision to continue IAS was punitive or administrative in nature, and that the trial court did not address the IAS issue. Accordingly, we remand to the trial court for this determination and for a determination of whether the matter is properly before the court under a common-law writ of certiorari.

### *Holding*

In light of the foregoing, we affirm in part and remand to the trial court. Costs of this appeal are taxed one-half to the Appellee, Tennessee Department of Correction, and one-half to the Appellant, Kenyale Pirtle, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE