IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2020

## JASON HALE v. TURNEY CENTER DISCIPLINARY BOARD ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 19-CV-6547      Michael E. Spitzer, Judge**
———————————————————

### No. M2020-00724-COA-R3-CV
———————————————————

Appellant prison inmate appeals the dismissal of his petition for a writ of certiorari. On appeal, Appellant asserts that the board failed to comply with the Uniform Disciplinary Procedure in imposing discipline in this case. Because the trial court did not abuse its discretion in denying the appellant relief, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jason Hale, Only, Tennessee, Pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Erin A. Shackelford, Assistant Attorney General, for the appellee, Turney Center Disciplinary Board, Timothy Thomas, Kevin Genovese, and Tony Parker.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

FACTUAL AND PROCEDURAL HISTORY

This is a case involving the discipline imposed on Petitioner/Appellant Jason Hale ("Appellant") by Respondent/Appellee Turney Center Disciplinary Board et al. ("the State"). Appellant is an inmate with the Tennessee Department of Correction ("TDOC"). At the time of the events at issue in this case, he was housed at the Turney Center Industrial Complex ("Turney Center"). On October 8, 2018, Appellant was placed in segregation "pending investigation for the safety and security of the institution." On October 9, 2018, an informant provided Turney Center officials with information that led to the discovery of a cell phone in a common area. Appellant was questioned on the same day, and he produced a SIM card that officials believed went with the confiscated cell phone. A disciplinary report was created concerning the incident on October 10, 2018. Appellant was served with the report the following day. Appellant remained in segregation.

The disciplinary proceedings were continued three times: (1) on October 12, 2018, to allow Appellant "Time To Prepare"; (2) on October 18, 2018, again to allow Appellant "Time To Prepare"; and (3) on October 25, 2018, "For Admin Due To Scheduling[.]"

The parties dispute what came next. Appellant contends in his brief that a disciplinary hearing occurred on October 26, 2018, after which he, with the advice of his inmate advisor, decided to plead guilty to the offense. According to the State, however, Appellant chose to enter the plea "in lieu of a disciplinary hearing." In any event, Appellant signed a form entitled "Agreement to Plead Guilty and Waiver of Disciplinary Hearing and Due Process Rights" ("plea form") on October 26, 2018. The plea form included the following language:

> I admit I violated the above listed rule(s) and agree to plead guilty and accept whatever punishment the disciplinary board may impose.

> * * *

> I am signing this agreement of my own free will and under no threat or coercion to do so. I understand that by signing this agreement, I must accept whatever punishment the disciplinary board may impose and will not be allowed to appeal.

Although Appellant insists that the section of the plea form for "[o]ffenses and [c]ategory" was blank at the time he signed, all of the copies of the plea form included in the appellate record contain a hand-written notation in this section that provides that Appellant is to receive a written warning, nine-month package restriction, and three-month visit suspension. Appellant signed the plea form, but he asserted that it was not signed in the

presence of a staff witness or signed and dated by the disciplinary board chairperson.[2] A disciplinary report hearing summary confirms that Appellant was found guilty of a "Class B PCT" infraction based on Appellant's plea and given a written warning, among other penalties. This summary was signed by the disciplinary board chairperson or hearing officer on October 26, 2018.

Appellant, however, contends that his inmate advisor "led [him] to believe" that he would only receive a verbal warning if he pleaded guilty to the offense. This type of warning was particularly important to Appellant because a written warning would cause him to lose his job with the Tennessee Rehabilitative Initiative in Correction ("TRICOR"), which paid substantially more than other inmate jobs.

Following the written warning, Appellant alleged that he lost his TRICOR job. He then appealed the disciplinary finding to the Turney Center Warden, who affirmed the discipline. Appellant next appealed to the TDOC commissioner, who denied the appeal on December 12, 2018, citing as the ground that Appellant was not permitted to appeal a guilty plea.

Appellant thereafter filed a petition for a writ of certiorari on February 1, 2019. TDOC notified the trial court on March 21, 2019, that it did not oppose the petition. The trial court therefore granted the writ on April 1, 2019, and ordered that the record of the disciplinary proceedings be filed in the trial court. Appellant filed an amendment to his petition on the same day. Appellant's TDOC disciplinary report related to the subject offense was filed on April 23, 2019.

Eventually, on April 27, 2020, the trial court entered an order denying Appellant's petition. Therein, the trial court ruled that Appellant failed to show that the State "exceeded their jurisdiction, followed an unlawful practice, patterns, procedure, or acted illegally arbitrarily, fraudulently, or without material evidence to support its decision." Moreover, the trial court noted that

> Possibly, if there had been a hearing, this [c]ourt would have more to consider, but that is not the case. While there may have been minor discrepancies in the exact procedure being following . . . it was all in the face of the petitioner surrendering the SIM card and somewhat quickly admitting guilt.

The trial court therefore denied Appellant relief, and he appealed to this Court.

---

[2] There are two different copies of the plea form in the appellate record. One copy is signed only by Appellant. Another copy contains signatures in the spaces designated for the staff witness and disciplinary board chairperson, both of which are dated October 26, 2018. The copies appear to be identical otherwise.

# STANDARD OF REVIEW

This case involves the common law writ of certiorari. *See **Clark v. Rose***, 183 S.W.3d 669, 673 (Tenn. Ct. App. 2005) (quoting ***Rhoden v. State Dep't of Corr.***, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) ("The proper vehicle for challenging a disciplinary action is a petition for a common law writ of certiorari. . . .")). "Since a writ of certiorari is not available as a matter of right, its grant or denial is within the sound discretion of the trial court. Such decision will not be reversed on appeal unless there is abuse of that discretion." *Id.* at 674.

The scope of review in the trial court was also limited. According to the Tennessee Supreme Court,

> This writ provides a limited scope of review by the courts. Review of [a board's] action in this case is limited to determining whether the board exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. In proceedings involving a common law writ of certiorari, illegal, arbitrary, or fraudulent actions include: 1) the failure to follow the minimum standards of due process; 2) the misrepresentation or misapplication of legal standards; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards. . . .

***Harding Academy v. Metro. Gov. of Nashville and Davidson Cnty.***, 222 S.W.3d 359, 363 (Tenn. 2007).

Appellant raises a single issue in this appeal: whether the trial court abused its discretion by not recognizing or utilizing the appropriate standard of review as determined by the Tennessee Supreme Court. In particular, Appellant contends that the trial court "made its decision based on the correctness of the decision[,]" rather than his actual argument concerning whether unlawful procedure was followed. According to Appellant, the disciplinary board failed to follow the TDOC Uniform Disciplinary Procedures ("UDP"), and he is therefore entitled to relief from the discipline imposed. Although we cannot agree that the trial court applied an incorrect standard of review,[3] we nevertheless consider Appellant's argument on appeal that relief should be granted because unlawful procedure was followed in the disciplinary proceedings.

# DISCUSSION

---

[3] The trial court's order specifically addresses whether proper procedure was followed, as detailed, *supra*.

## I.

As an initial matter, we note that Appellant is proceeding pro se in this appeal, as he did in the trial court. The law is well-settled in Tennessee, however, that pro se litigants must comply with the same standards to which lawyers must adhere. ***Watson v. City of Jackson***, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

***Jackson v. Lanphere***, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting ***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (internal citations omitted)). Moreover, "we have ruled that this leeway is generally reserved for those 'untrained in the law.'" ***Masserano v. Masserano***, No. W2018-01592-COA-R3-CV, 2019 WL 2207476, at *5 n.11 (Tenn. Ct. App. May 22, 2019 (quoting ***Lacy v. Mitchell***, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016) (citing ***Hessmer***, 138 S.W.3d at 903)). Regardless of Appellant's pro se status, his brief is fully compliant with Rule 27 of the Tennessee Rules of Appellate Procedure. In addition, Appellant's arguments are both well-executed and properly supported.

## II.

"A prisoner seeking judicial review of a prison disciplinary proceeding states a claim for relief under common-law writ of certiorari if the prisoner's complaint alleges facts demonstrating that the disciplinary board failed to follow the Uniform Disciplinary Procedures and this failure substantially prejudiced the petitioner." ***Willis v. Tennessee Dep't of Correction***, 113 S.W.3d 706, 713 (Tenn. 2003). "Not every departure from the Uniform Disciplinary Procedures amounts to a due process violation warranting relief through a writ of common-law certiorari." ***Jeffries v. Tennessee Dep't of Correction***, 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002). Indeed, TDOC Policy "itself provides that 'minor deviations' from the procedures that do not prejudice the prisoner do not require dismissal of the disciplinary offense." ***Id.*** (quoting UDP 502.01(V) ("Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show substantial prejudice as a result and that the error would have affected the disposition of the case.")). "To trigger judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing." ***Id.***

Here, Appellant alleges that three violations of UDP 502.01.VI(K)(2) occurred in the disciplinary proceedings. The policy provides, in relevant part, as follows:

> If the inmate wishes to exercise the waiver provided by this agreement form, he/she will sign the form in the presence of a staff witness (other than the reporting official) who will also sign the form. . . . The form will be attached to the disciplinary report and forwarded to the disciplinary board chairperson who will sign and date the form. The form must be completed within two working days after the issuance of the disciplinary report.

UDP 502.01.VI(K)(2). According to Appellant, the plea form was not witnessed or signed by a staff witness, was not signed by the disciplinary chairperson, and was not completed within two days of the issuance of the disciplinary report. Appellant further contends that he was confined for more than seventy-two hours prior to the disciplinary hearing in violation of UDP 502.01.VI(A)(b) ("Inmates who are confined in segregation pending a disciplinary hearing should not be confined for more than 72 hours (including weekends) prior to a hearing, unless the hearing is continued at the inmate's request.").

The State does not generally dispute these allegations, but contends that Appellant has not shown that he was in any way prejudiced by these failures. We agree. First, we note that it is unclear how the plea form could possibly have been completed within two days of the issuance of the disciplinary report. First, the first hearing date was continued at Appellant's request. Moreover, according to Appellant's own timeline, he did not decide to complete the plea form and waive his rights until October 26, 2018. As such, it does not appear appropriate to hold the State responsible for the violation of the two-day time period.

The same is generally true of the issue regarding Appellant's prolonged segregation. Here, the record reflects that Appellant requested the first two continuances. Thus, only the final continuance was not requested by Appellant. The policy limiting segregation unless a continuance is requested by the inmate, however, provides that a violation thereof should not result in dismissal of the disciplinary charge. Rather, the policy states that "[f]ailure to comply with this provision [regarding continuances] shall not constitute grounds for dismissal of the pending charge." *Id.* As such, even though this provision may have been violated, it is simply not sufficient to justify dismissal of the disciplinary action against Appellant.

The State also asserts that Appellant can show no prejudice for the failure of a staff member to witness and sign the plea form, as well as the failure of the board chairperson to sign it.[4] We agree. Here, Appellant signed a form that specifically stated that he signed

---

[4] Again, we note that the record contains two copies of this form, one of which contained the necessary signatures. However, TDOC does not appear to dispute that the alleged deviations occurred.

of his "own free will" and agreed that by doing so, he "must accept whatever punishment the disciplinary board may impose[.]" Appellant does not assert that his decision to sign the plea form was in any way influenced by the fact that it was not also signed by the other required individuals. Nor does he explain how his ability to present a defense was prejudiced by these deviations. Rather, he simply takes issue with the punishment that the disciplinary board chose to impose. Indeed, Appellant does not state that he was promised or even expressly informed that the punishment would be lighter, but only that his inmate advisor "led [him] to believe" that he would only receive a verbal warning. Respectfully, this complaint has no relation to the procedural failures that he now contends entitle him to relief from his decision to forgo a hearing.

In sum, although the record does reflect "minor deviations" from the applicable procedures, *see Jeffries*, 108 S.W.3d at 873, Appellant has not shown that he was "substantially prejudiced" by these failures. *Willis*, 113 S.W.3d at 713. Appellant is simply unhappy with the discipline that was imposed based on his voluntary decision to forgo a hearing and plead guilty to the disciplinary charges against him. There is no dispute, however, that Appellant was found with a SIM card for a cell phone and that he voluntarily chose to plead guilty to the charge of possessing a cell phone and to accepting the punishment that the disciplinary board chose to impose. Thus, even after a thorough review of the record and Appellant's allegations, we cannot conclude that Appellant was effectively denied a fair hearing. *See Jeffries*, 108 S.W.3d at 873. As such, the trial court did not abuse its discretion in denying Appellant's petition for relief.

## CONCLUSION

The judgment of the Hickman County Chancery Court is affirmed, and this cause is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant, Jason Hale, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 7 -