IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs November 29, 2007

## KEENAN R. KEEN v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 06-242C     Timothy L. Easter, Judge**

_____

**No. M2007-00632-COA-R3-CV - Filed February 25, 2008**

_____

A Prison Disciplinary Board found a prisoner guilty of two disciplinary infractions, fined him $5.00 for each infraction and sentenced him to two thirty-day terms in punitive segregation. The prisoner filed a petition for writ of certiorari, alleging that there were irregularities in the procedures followed by the disciplinary board and that its actions were arbitrary, capricious, and characterized by an abuse of discretion. The trial court granted the writ, and the department accordingly sent the administrative record to the court for review. The respondents then filed a motion for judgment on the record. The trial court granted the motion and dismissed the prisoner's claim. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Keenan R. Keen, Petros, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Kellena Baker, Assistant Attorney General, for the appellee, Tennessee Department of Correction, et al.

## OPINION

### I. DISCIPLINARY PROCEEDINGS

The events that led to this appeal began on March 23, 2006. On that date, a disturbance at the chow hall of the Turney Center Industrial Prison led correctional officers to detain Keenan R. Keen for his role in the disturbance. They told him to pack up his property because he was being moved to segregation. According to the disciplinary report filed against him, Mr. Keen refused to re-enter the cell. This refusal was deemed to be suspicious, because Mr. Keen had a history of complaining about officers being in his cell.

Correctional officers accordingly proceeded with caution, and they allegedly discovered six razor blades which had been removed from their original holders. The blades were placed in various locations in the cell, including under the edges of the cell table, under the inmate's seat, and beneath the lower edge of the bottom bunk, places where correctional officers normally use their hands to feel for contraband or weapons while searching inmate cells. Several sewing needles were also found lodged in the mattress of the lower bunk.

Sergeant Nicky Jordan investigated this incident, and prepared a disciplinary report which stated that Mr. Keen had intentionally created a booby trap in order to injure the correctional officers searching the cell. Mr Keen was charged with violation of state law (criminal attempt under Tenn. Code Ann. § 39-12-101) and with possession of a deadly weapon. The disciplinary hearing was conducted on March 29, 2006. Mr. Keen was represented by an inmate advisor. The evidence presented included the testimony of Sergeant Jordan and photographs of the razor blades and of the needles allegedly found in Mr. Keen's cell. Mr. Keen testified in his own defense. He admitted that the razor blades and needles were his, but he claimed that their placement had been staged by the officers so that more serious charges could be lodged against him. He denied that he had any intention to injure anybody.

The three members of the disciplinary board found Mr. Keen guilty of the charges presented, and they imposed penalties of thirty days of punitive segregation and a fine of $5.00 for each infraction.[1] Mr. Keen appealed the decision. The warden affirmed the Board's decision on April 12, 2006, stating that after review of the disciplinary report, the hearing summary and of all related documentation, he found that "[p]unishment guidelines were not exceeded. No violations of disciplinary procedures were cited or ascertained." The guilty finding was also affirmed on appeal to the Commissioner of Correction, who found "no due process violation."

## II. COURT PROCEEDINGS

On July 18, 2006, Mr. Keen filed a Petition for Writ of Certiorari in the Chancery Court of Hickman County, accompanied by an affidavit of indigency. He named the warden of the prison and the Commissioner of Correction as respondents.[2] He alleged in general terms that the respondents had exceeded their jurisdiction and had "acted illegally, fraudulently, and in an arbitrary and capricious manner." He objected to the fact that the correctional officers who found the razors and the needles were not called to testify at the disciplinary hearing. He also argued that at the very most he should have been charged with possessing contraband items, and that he had never been charged with any violence against staff or inmates prior to the incident that gave rise to this appeal.

The respondents filed a "Notice of No Opposition to Granting Petition for Writ of Certiorari." The petition was granted, and they prepared and certified the record of the disciplinary

---

[1]Mr. Keen also states that after this incident he was placed in involuntary administrative segregation for an indefinite period of time.

[2]Although the heading of Mr. Keen's petition only names the Warden and the Commissioner as respondents, in the body of his pleading he requests that each of the members of the disciplinary board be asked to respond to his allegations of errors in the disciplinary process.

proceedings and filed it with the trial court. After the record was filed, the respondents filed a Motion for Judgment on the Record. Mr. Keen also filed a Motion for Judgment on the Record. The trial court granted the respondents' motion and dismissed Mr. Keen's claim. The prisoner then filed a motion to alter or amend the trial court's order, which was denied. This appeal followed.

### III. THE WRIT OF CERTIORARI

The common-law writ of certiorari is the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole boards, and other administrative tribunals. *Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003); *Rhoden v. State Dep't of Correction*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998). However, the issuance of the writ is not an adjudication of anything. *Gore v. Tenn. Dep't of Correction,* 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003). It is simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief. *Hawkins v. Tenn. Dep't of Correction*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001).

The grounds for relief under a writ of certiorari are quite limited. Review is limited to whether "the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally arbitrarily or fraudulently." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990); *Turner v. Board of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999). The reviewing court "may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the lower tribunal." *Arnold v. Tennessee Board of Paroles,* 956 S.W.3d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Board,* 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). Thus, a trial court's scope of review under the writ of certiorari does not involve an inquiry into the intrinsic correctness of the decision reached by the tribunal below, but only the manner in which the decision was reached. *Hall v. McLesky*, 83 S.W.3d at 757 (citing *Powell*, 879 S.W.2d at 873).

Mr. Keen has claimed that the respondents exceeded their jurisdiction and that they acted "illegally, fraudulently, and in an arbitrary and capricious manner." However, he does not actually claim that the disciplinary board lacks the jurisdiction to hear and adjudicate charges such as those leveled against him, or that it did not have the authority to impose the penalties that were assessed. We find no basis for the claim that the board exceeded its jurisdiction.

Mr. Keen argues on appeal that the disciplinary board subjected him to double jeopardy by finding him guilty of two charges which arose from the same incident, and that they violated his due process rights. However, double jeopardy prohibitions apply only to criminal proceedings. *Livingston v. State of Tenn. Board of Paroles*, No. M1999-01138-COA-R3-CV, 2001 WL 747643, at *6 (Tenn. Ct. App. July 5, 2001) (no Tenn. R. App. P. 11 application filed); *Blackmon v. Campbell*, No 01A-1-9807-CH-00361, 1999 WL 85518, at *2 (Tenn. Ct. App. Feb. 23, 1999)(no Tenn. R. App. P. 11 filed). It has long been understood that proceedings conducted by a prison disciplinary board are administrative in nature. They are not criminal proceedings as the law understands that term. *Ray v. State*, 577 S.W.2d 681, 682 (Tenn. Crim. App. 1979); *State ex rel Turner v. Gore*, 175 S.W.2d 317, 318 (Tenn. 1943).

Further, even in the criminal context, multiple charges can, and sometimes do, arise from a single incident without implicating double jeopardy concerns. We note that the two charges in question are actually separate and distinct. The charge of possession of a deadly weapon was based on Mr. Keen's physical possession of the razors and needles found in his cell. The charge of attempted assault was based on the placement of those items in a way that was allegedly calculated to injure the correctional officers who searched his cell.

Mr. Keen's due process argument is somewhat meandering, but it appears to us that he is primarily complaining that he was unable to call as witnesses the correctional officers who had packed up the contents of his cell and who had allegedly discovered the booby-trapped razors. Instead, the disciplinary board relied on a report by the correctional officer who had investigated the incident of March 23, 2006, but who had not actually witnessed that incident, or at least had not been present during the search of the prisoner's cell.[3]

In *Sandin v. Connor*, 515 U.S. 472 (1995), the United States Supreme Court examined the question of due process rights within the context of prison disciplinary proceedings. The Court observed that a party is entitled to due process protection only where that party is threatened with deprivation of a protected interest in life, liberty or property. Since incarceration by its nature necessarily involves a retraction of liberty, and the circumstances of prison life sometimes require the imposition of additional constraints, such as disciplinary or administrative segregation, the court reasoned that there is no liberty interest in remaining free of such constraints, so long they do not exceed the sentence or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. The *Sandin* court held that a punishment of 30 days segregation was not an atypical, significant deprivation such as would trigger an inmate's due process rights. 515 U.S. at 485-86.

In *Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003), the Tennessee Supreme Court, citing *Sandin,* held that since none of the penalties imposed on the prisoners by the disciplinary board in that case involved deprivation of a constitutionally protected right, the prisoners' argument that they were deprived of constitutional due process was without merit. The penalties imposed upon Mr. Keen in this case were the same as those imposed on the petitioners in *Sandin* and *Willis*. Mr. Keen's due process claims are precluded by the holdings in *Sandin* and *Willis*.

---

[3]Thus, Mr. Keen is apparently arguing that the disciplinary board violated his due process rights by depriving him of the benefits of the confrontation clause. *See* U.S. CONST. Amend VI.; TENN. CONST., Art. I, Sect 9. An individual charged with a crime has the right "to be confronted with the witnesses against him," U.S. CONST. Amend VI., and "to meet the witnesses face to face." TENN. CONST., Art. I, Sect 9. However, because of the unique conditions of prison life, our courts have declared many times that prisoners subjected to institutional disciplinary proceedings do not enjoy "the full panoply of rights" accorded to defendants in criminal trials. *Gore v. Tenn. Dep't of Correction*, 132 S.W.3d at 377-78 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 540 (1974). Among these rights are those arising from the confrontation clause, which do not apply in proceedings like the one before us. *Higgins v. White*, No. M2004-00412-COA-R3-CV, 2006 WL 1763648, at *4 (Tenn. Ct. App. June 27, 2006) (no Tenn. R. App. P. 11 application filed); *Davis v. Campbell*, No. 02A01-9611-CV-00268, 1997 WL 777079, at *3 (Tenn. Ct. App. Dec. 18, 1997) (no Tenn. R. App. P. 11 application filed).

The *Willis* court did, however, reverse the trial court's denial of the writ of certiorari, holding that the petition contained allegations of procedural irregularities apart from due process claims sufficient to survive a Rule 12.02(6) motion to dismiss for failure to state a claim. The inmate petitioner in *Willis* alleged, *inter alia*, a failure to follow the written procedures of the Department of Correction governing disciplinary proceedings that were designed to provide for the fair and impartial determination and resolution of disciplinary charges against inmates. The court held that substantial deviations from those procedures which substantially prejudice the outcome of a hearing can form the basis for relief under the common-law writ of certiorari. *Willis*, 113 S.W.3d at 714.

Based on this holding, the *Willis* court accordingly ordered the trial court to grant the petition, so the disciplinary record could be sent up for review, and the trial court could address the substance of the petitioners' claims in light of that record. In the present case, the trial court granted Mr. Keen's petition for writ of certiorari, and it thus had the opportunity to review the record of the disciplinary proceeding before reaching its decision.

As we stated above, the reviewing court does not re-weigh the evidence, but must uphold the decision of the inferior tribunal if that tribunal acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support its findings. *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983); *Watts v. Civil Service. Board of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980). These determinations are issues of law. *Watts*, 606 S.W.2d at 277. Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993); Tenn. R. App P. 13(d).

The disciplinary proceedings below were governed by the Uniform Disciplinary Procedures of the Department of Correction. Those procedures were designed to "provide for the fair and impartial determination and resolution of all charges placed against inmates committed to the Tennessee Department of Correction (TDOC)." Index #502.01(II). They include requirements for prior notice of charges to inmates, the assistance of an inmate legal adviser, an opportunity to be heard. The record shows that Mr. Keen was notified of the charges against him, that he was given time to prepare to respond to those charges, and that an inmate legal advisor assisted him in that process.

While these are familiar features of our legal system, the Uniform Disciplinary Procedures differ in some significant ways from the procedures that bind our criminal courts, proceedings which may result in the initial loss of freedom. For example, guilt of a disciplinary infraction does not have to be proven beyond a reasonable doubt, but only by a preponderance of the evidence. Index #502.01(VI)(E)(9)(i)(1). Further, the disciplinary board is entitled to consider any evidence it finds reliable, whether or not such evidence would be admissible in a court of law. Index #502.01(VI)(E)(9)(c)(2).

Mr. Keen argues that because he was unable to call as witnesses the correctional officers who packed up the property in his cell, we should reverse the trial court and grant him the relief he seeks. The Uniform Disciplinary Procedures include a process by which inmates can file written requests

for the appearance of witnesses at disciplinary hearings. No such written requests are found in the record.

Mr. Keen suggests that he did not know which correctional officers were involved, because their names were not included in Sergeant Jordan's report. It is possible he could have filed such a request nonetheless, using some other form of description to designate the relevant individuals. The Procedures also allow an inmate to request a continuance of a scheduled hearing for up to seven days, Index #502.01(VI)(D)(4)(a)(1), which might have given Mr. Keen additional time to identify these (or other) witnesses, but no such request for continuance is found in the record. We find nothing in the record to indicate that, as a matter of law, the disciplinary board acted illegally or fraudulently.

The disciplinary record shows that Mr. Keen appeared at the hearing, and that he had access to an inmate legal advisor. Photographs of the razor blades and needles were introduced into evidence. Mr. Keen admitted that the razors were his, but he denied that he ever intended to harm anyone. The board also heard from Sergeant Jordan. At the conclusion of the proof, the three members of the disciplinary board found by a preponderance of the evidence that Mr. Keen was guilty of the charges presented.

For Mr. Keen, the bottom line of this appeal is his insistence that he is innocent of the charges for which he was convicted. He claims that he "is known for sewing throughout the institution," that he uses the razor blades for cutting thread and material, that correctional officers staged the placement of these items in such a way as to make him seem guilty of malicious intent, and that they were motivated by long-standing hostility against him by one or more correctional officers. However, as we stated above, a court reviewing a petition for writ of certiorari may not inquire into the intrinsic correctness of the decision of the tribunal below. *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001).

Instead, with regard to the sufficiency of the evidence, a reviewing court must simply determine whether material evidence was presented to the inferior board or tribunal to support its decision. A decision is arbitrary and void if it is unsupported by any material evidence, or if the tribunal fails to follow the essential requirements of the law. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d at 276-77; *Hawkins v. Tenn. Dep't of Correction*, 127 S.W.3d at 757. An appellate court reviewing a trial court's decision follows the same standard of review. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d at 277. We have earlier described the evidence presented at the hearing, and we conclude there was material evidence to support the disciplinary board's decision.

## III.

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Hickman County for any further proceedings necessary. Tax the costs on appeal to the appellant, Keenan R. Keen.

_____
PATRICIA J. COTTRELL, JUDGE