IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 10, 2014 Session

PHILLIP M. NALL, ET AL. v. THE CITY OF OAK RIDGE, ET AL.

Appeal from the Chancery Court for Anderson County
No. 12CH4747     William E. Lantrip, Chancellor

No. E2013-02608-COA-R3-CV - Filed October 10, 2014

Four sergeants with a municipal police department filed a grievance complaining that there
was an unlawful disparity in pay among the sergeants on the force. The personnel board for
the municipality denied the grievance. The sergeants appealed. The trial court determined
that the Uniform Administrative Procedures Act was applicable under the facts of the case
and the personnel board's decision that it lacked authority to grant the relief sought was
supported by material and substantial evidence. We affirm as modified.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO,
JR., C.J., and D. MICHAEL SWINEY, J., joined.

Charles C. Burks, Jr., Knoxville, Tennessee, for the appellants, Phillip M. Nall and Robert
M. Pitts.

John T. Batson, Jr., and Brian R. Bibb, Knoxville, Tennessee, for the appellees, City of Oak
Ridge; James T. Akagi, Oak Ridge Police Chief; Tom Beehan, Oak Ridge Mayor; Mark S.
Watson, City Manager; and City of Oak Ridge Personnel Advisory Board.

OPINION

I. BACKGROUND

This pay dispute began in November 2011 when Sgt. Phillip M. Nall with the Oak
Ridge Police Department ("the ORPD"), now retired, forwarded a written pay inquiry to
Police Chief James T. Akagi. Sgt. Nall observed that two recently promoted sergeants (Jock

Coleman and Ron Boucher) who had previously held the rank of detective would be compensated at a level higher than that of the more senior sergeants in the ORPD.

The City of Oak Ridge ("the City") compensates its employees based on a scaled pay grade compensation system. All positions are assigned a specific pay grade and each grade is given an annual and hourly range for pay. At the time of this dispute, law enforcement officers were compensated at Grade 17, detectives were compensated at Grade 19, and sergeants were compensated at Grade 21. Sgt. Nall's grievance relates to a change in the pay grade classification system that occurred when the separately graded position of detective was added in 2003 after the City Council enacted a new compensation and classification plan. Sgts. Coleman and Boucher thereafter were promoted from police officer to detective and then to sergeant, at each point receiving a ten percent pay increase in accordance with the terms of the Pay Plan of the City's Personnel Plan.[1] When Coleman and Boucher were detectives, they were compensated at or near the top of the pay range provided for the detective position. Thus, when they received their promotion to sergeant, the required minimum ten percent pay increase placed them at or near the top of the pay range for the position of sergeant.

In response to Sgt. Nall's inquiry, Chief Akagi noted there was no fiscal mechanism in place to adjust salaries based on equitable compensation. He directed Sgt. Nall to Personnel Director Penelope Sissom. Sgt. Nall thereafter filed an official grievance. He was joined in his grievance by Sgts. Paul Nance, Cartel Webb, and Robert Pitts (collectively, "the Sergeants"). Each of the Sergeants received the following annual pay: Pitts – $55,390.40 (currently -- $56,222.40); Webb -- $55,286.40 (currently -- $56, 118.40); Nance – $55,307.20 (currently -- $56,139.20); and Nall – $55,556.80 (at retirement -- $56,409.60). The newly appointed sergeants received the following salaries:  Coleman -- $60,964.80 (currently -- $61,235.20.  Boucher – $ 60,819.20 (currently -- $61,235.20).

In their grievance, the Sergeants relied upon pertinent provisions in Article V, section 1 of the Pay Plan:

> c. The City will build its merit system upon high but realistic expectations for employee performance. No employee shall be rewarded for unacceptable performance levels. Heads of departments and supervisors shall use the compensation plan fairly and equitably in influencing their employees to perform to

---

[1]Article V, section 3 of the Pay Plan provides that where an employee is promoted to a classification with a higher pay grade, the employee's prior rate of compensation must be increased a minimum of ten percent in order to bring the employee within the new range of the provided pay grade.

their maximum capability.

> d. The compensation plan shall be adjusted from time to time when there is clear evidence that such adjustment is necessary to meet the policies described above. For budgetary purposes, the City Manager shall be authorized to include in his budget any recommendation for adjustment to the pay plan, which he deems advisable, but such adjustment should be based on the prevailing rates in the recruiting area.

They argue subsection **(c)** requires that compensation within the City be fair and equitable, and that subsection **(d)** addresses how it can be achieved. The Sergeants assert their pay should be adjusted based on seniority.

After receiving the official grievance, Chief Akagi, citing provisions of the City's Personnel Plan, determined that he lacked the authority to unilaterally adjust salary. He noted the following:

> Your argument is internal equity is not served when newly promoted personnel with little or no experience in the new job classification are compensated at a greater rate than personnel already serving in an acceptable manner in that position. Whereas you do not feel this is equitable, I believe Section 5.3(d) provides a numerical formula which clearly defines standard pay grade increases, as opposed to the philosophy of internal equity, which could be construed as subjective at best. If the head of a department were to arbitrarily initiate pay increases based on the philosophy of internal equity, the potential for further grievances and potential litigation would increase exponentially, as anyone could argue internal equity was applied in a capricious manner without sufficient justification. Therefore, I believe a clearly defined numerical formula overrides the philosophy of internal equity.

> Finally Article 1, Section 1.2(d) states, "*Every consideration shall be given to the rights and best interests of the public and City.*" While you maintain your rights and interests were not given every consideration[,] I believe the current system for salary rate increases and compensation is consistent with the best interest of the public and City, and the arbitrary initiation of pay increases by heads of departments based on the philosophy of internal equity, and ensuing potential for increase of grievances filed and litigation is not."

Chief Akagi thereafter forwarded the grievance to City Manager Mark Watson.

An administrative hearing was conducted by the City Manager. He subsequently issued a memorandum observing the Sergeants perhaps had identified a defect in the Pay Plan. However, based upon the structure of the existing Pay Plan, he found no violation. The Sergeants sought review by the Personnel Advisory Board ("the Board").

On August 24, 2012, counsel for the Sergeants appeared before the Board. They cited three prior incidents as examples where pay adjustments had occurred within the ORPD. The Board, however, found that the actions relied upon did not support the contentions of the Sergeants. The Board concluded as follows: Sgt. Louis Leopper received no equitable adjustment to his pay; Officer John Hill's grievance, similar to that of the Sergeants, was denied in 2003 when the Board found no violation of the Pay Plan by the City; and the promotion of Officer Matthew Tedford -- first to detective and later to sergeant -- was not done to equitably increase his pay. Upon the conclusion of the hearing, the Board found unanimously that the Pay Plan provisions of the Personnel Plan had not been violated. A final order was entered on September 7, 2012, affirming in writing the oral vote taken at the hearing.

The City acknowledged that, under the structure of the current Pay Plan, discrepancies may exist within a certain position where a more senior employee may be compensated at a lower rate than a less senior employee. It argued, however, that it was not currently in a financial position to equitably adjust the salaries of all City employees to properly reflect any and all mitigating factors that may influence the propriety of the set salary. Additionally, the City noted that seniority is not necessarily a consideration independent of the pay grade system in the Pay Plan.

The Sergeants thereafter sought judicial review by filing a petition for writ of certiorari. After a hearing, the trial court entered a judgment and final order on October 28, 2013. The court held as follows:

THE COURT: Well, the Court is going to give a broad interpretation. I think that this -- that the legislature intended for, and I'm going to find that the uniform act is applicable, that this -- that it as it relates to the issue is paid, paid, which is a -- is an employment action. Even accepting that the uniform act is applicable, I believe under either standard, even using the standard of substantial and material evidence guide of the act, that the board's decision is supported by material and substantial evidence, which [pre]cludes the Court from altering or changing the decision.

The -- the -- I believe that the personnel ordinance sets up a mechanism for the police chief and the city manager to consider article five and to make -- make

-4-

adjustments, but their failure or refusal to do so, I don't believe is something that the board had -- is empowered to alter or to change, that the promotion provisions of the detective to the sergeant position was adopted by the city council and is the plan in effect. Its effect of having an increase for a promotion from that position is -- is something that the legislature enacted, and I don't believe that it creates a -- a issue upon which the personnel advisory board could do anything but make recommendation to the city manager and the city council, and for that reason, the Court is finding on behalf of the defendant.

\* \* \*

MR. BURKS: Is it the Court's position that their ruling was only a recommendation and advisory to the city manager as opposed to the final hearing? . . .

THE COURT: Well, I think they made -- they made a final ruling and that ruling is in essence that there was no basis for the -- for the grievance filed and that there is material and substantial evidence based upon the Court's further -- the previous finding that would -- would cause the Court to affirm and to not to alter or change or amend or remand the matter under the uniform act. . . .

The Sergeants filed a timely appeal.[2]

## II. ISSUES

The issues presented for review by the Sergeants are restated as follows:

A.    Whether the trial court correctly concluded that the Uniform Administrative Procedures Act dictated the standard of review in this case.

B.    Whether the trial court correctly affirmed the decision of the Board.

C.    Did the trial court incorrectly determine that the Sergeants had waived their right to raise the conflict of interest issue.

---

[2]Sgts. Nall and Pitts remain as parties in this appeal.

### III. & IV. STANDARD OF REVIEW & DISCUSSION

The parties disagree over the appropriate standard for review. The City asserts that the matter is properly reviewed under the common law writ of certiorari. The Sergeants agree with the trial court's determination that this matter should be reviewed under the Uniform Administrative Procedures Act ("UAPA") pursuant to the provisions of Tennessee Code Annotated section 27-9-114. That statute governs the procedure and appellate review for proceedings involving certain public employees. It provides in relevant part:

> (a)(1) Contested case hearings by civil service boards of a county or municipality which affect the employment status of a civil service employee shall be conducted in conformity with contested case procedures under the Uniform Administrative Procedures Act . . . .

Tenn. Code Ann. § 27-9-114(a)(1). In *Tidwell v. City of Memphis*, 193 S.W.3d 555 (Tenn. 2006), the Supreme Court explained:

> In order for section 27-9-114(a)(1) to apply, there must (1) be a proceeding before a "civil service board" and (2) a decision that affects the "employment status" of a civil service employee. In the absence of either of these two prerequisites, the provisions of section 27-9-114 do not apply. If section 27-9-114 does not apply, then review is under the common law writ of certiorari, which limits the review to whether the administrative agency has exceeded its authority or has acted illegally, arbitrarily, or fraudulently.

193 S.W.3d at 559-60 (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990)).

Does the City's Board qualify as a civil service board under Tennessee Code Annotated section 27-9-114? In *Tidwell*, the Court found that qualifying as a "civil service board" under the UAPA did not require technical designation as such. 193 S.W.3d at 562. The Court stated that an entity sitting in an "adjudicative capacity" making decisions that affect a worker's "employment status" is the "functional equivalent" of a civil service board as contemplated in Tennessee Code Annotated section 27-9-114. *Id.* The Court determined that the municipal entity at issue in *Tidwell* was a civil service board because, among other things, it held hearings, analyzed evidence, and determined appeals from administrative decisions to grant or deny benefits. *Id.* at 563. Furthermore, citing our decision in *Love v. Retirement Sys. of City of Memphis, Tenn.*, 1987 WL 17246, at *1 (Tenn. Ct. App. Sep. 21, 1987), the Court concluded that "employment status" encompasses the "entire legal relation of the employee to the employer." *Id.* The Sergeants contend that an employee's income

affects employment status.

## a. Adjudicative Capacity

Pursuant to the City's Charter, the Board in this case was authorized to

> investigate complaints made to it in writing by any officer . . . who is included in the merit system and ***who is suspended or removed from his or her position or otherwise adversely affected by a personnel action***. If in the opinion of the board, the ***procedures established for such personnel action were not complied with, the board shall make decisions that shall be binding.*** In all other cases, the board shall report its findings and recommendations, which shall be advisory in nature, in writing to the manager. . . .

Charter, Art. V., Sec. 25 (emphasis added). Article 10(4) of the Grievance Procedure similarly provides that

> Personnel Advisory Board shall investigate such complaints made to it in writing by an officer or employee who is included in the merit system and who is suspended or terminated from a position or otherwise, adversely affected by a personnel action. ***If, in the opinion of the Board, the personnel ordinance provisions established for such personnel actions were non-complied with, the Board shall make decisions that shall be binding on the City Manager.*** In all other cases, the Board shall report its findings and recommendations, which shall be advisory in nature in writing to the Manager, and the decision of the Manager shall be final.

(Emphasis added.). Accordingly, if an officer "is suspended or removed from his or her position or otherwise adversely affected by a personnel action," the Board "shall make decisions that shall be binding" on the question of whether the Personnel Plan procedures have been complied with. The Board's review is limited to the Plan provisions, and it is not authorized to conduct an evidentiary hearing to make findings of fact. It is limited to determining whether the City's personnel procedures were followed correctly. In all other situations, the Board acts only in an advisory capacity making recommendations to the City Manager, whose decisions "shall be final." The Board therefore was not acting in an adjudicative capacity, and, in our view, does not fall within the definition of civil service board set out in *Tidwell*. The Board has no authority to remedy/alter an inequitable pay structure - such can be addressed only by City Council action. Within the confines of its limited power, the Board indicated that it would review the language of the Pay Plan and consider formulating recommendations for future changes. City Manager Watson also

recognized possible inefficiencies within the Pay Plan, and stated he would recommend review of its provisions, both with respect to the time period between promotions and as to the position of sergeant. The Sergeants received all the relief the Board was authorized to give them.

### b. Employment Status

The City further argues that the decision made by the Board did not affect the employment status of the Sergeants. They were denied no benefit to which they were otherwise entitled and were not the subjects of an adverse personnel action. Instead, they requested a modification to the Pay Plan to adjust the pay of all employees within a given position to better reflect the amount of time an employee has held that position. The Personnel Plan in no way indicates that it grants the Sergeants an expectation in a pay scale based on seniority within a given position. The Charter specifically provides that the purpose of the City's merit system established by City Council is to appoint and promote city officers and employees "on the basis of competence and fitness" and not seniority. Charter, Art. V, sec. 23. Therefore, the decision of the Board did not affect the "employment status" of the Sergeants.

Accordingly, under the test set out for the applicability of the UAPA to certiorari review actions, with respect to the specific grievance at issue, the Sergeants cannot show the Board is a civil service board within the meaning of section 27-9-114. Therefore, the trial court incorrectly applied the UAPA to the facts of this case.

The common law writ of certiorari in Tennessee Code Annotated section 27-8-101 provides that the writ may be granted "in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally[.]" Judicial review under a writ of certiorari is limited, and is confined only to determining whether the inferior board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *Lewis v. Bedford Cnty. Bd. of Zoning Appeals*, 174 S.W.3d 241, 245 (Tenn. Ct. App. 2004) (citing *Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003)).

### c. Pay Plan

The letter of the Pay Plan was not violated. Sgts. Boucher and Coleman were entitled to their ten percent pay raise upon promotion to detective and a ten percent pay raise upon promotion to sergeant. All six sergeants were compensated within the range provided in pay grade 21. It is within the Board's purview to construe the terms "fair" and "equitable" in

administering the Pay Plan, and the Board's interpretation and application of the relevant sections are entitled to great deference. Indeed, the Board's interpretation of its own regulations, unless clearly erroneous, must govern the sufficiency of its decision on appeal.

As the Pay Plan was established by an ordinance of the City Council, it can only be adjusted by action of that body. The Plan does not provide a mechanism for salary adjustment on an individual basis. Further, the Pay Plan must be administered in light of the best interests of the City, including the "availability of funds." The Board found persuasive the City's assertion that it "is not in a financial position to make salary adjustments to senior employees citywide." Based on its interpretation of the Personnel Plan and Pay Plan, the Board determined that an adjustment was not warranted and would not be in the best interest of the City nor wise in light of the availability of funds. The decision must be affirmed.

### d. Conflict of Interest

The Sergeants argue that a conflict of interest was created by the participation of the City Attorney's office in the proceedings before the Board. Their failure to preserve an objection notwithstanding, the administrative record provides no evidence of any impropriety. The Sergeants were given a copy of the relevant by-laws with their notice of hearing. City Attorney Ken Krushenski was required to appear and attend the hearing as independent counsel for the Board. Senior Staff Attorney Tammy Dunn represented the City at the hearing. Pursuant to the Charter, the City Attorney is charged with advising City officers and employees on legal matters. Charter, Art. III, sec. 13. During the argument before the trial court, it was noted that the City Attorney answers to City Council and the Senior Staff Attorney to the City Manager.

Prior to either the post-hearing discussion or preparation of the written opinion, the Board voted to deny the Sergeants' grievance. The minutes reveal what was discussed after the Sergeants departed, specifically that the Board intended to consider recommending changes to the Pay Plan to place a minimum space of time between promotions. The final order prepared by Mr. Krushenski was simply a written memorialization of the decision that the Board had already made in open session. The record reflects no undue reliance on Mr. Krushenski's opinions or suggestions -- in fact, the Board made its decision prior to any involvement by Mr. Krushenski. The decision of the trial court on this issue is affirmed.

Accordingly, the decision of the Board was proper and the ruling of the trial court dismissing the certiorari petition should be affirmed as modified.

## V.  CONCLUSION

The trial court incorrectly applied the UAPA, but the decision of the City's Board was supported under either evidentiary standard.  The judgment of the trial court is affirmed as modified and the cause remanded for collection of costs assessed below.  Costs on appeal are taxed to the appellants, Phillip M. Nall and Robert M. Pitts.

_____
JOHN W. McCLARTY, JUDGE