
# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs January 4, 2017 Session

## GRENDA HARMER v. TURNEY CENTER DISCIPLINARY BOARD, ET AL.

### Direct Appeal from the Chancery Court for Hickman County
### No. 16-CV-5667    Joseph Woodruff, Judge

### No. M2016-01156-COA-R3-CV

This appeal involves review of prison disciplinary proceedings. The prisoner pled guilty to the possession of contraband and waived his right to a formal disciplinary hearing. He later attempted to appeal his conviction and have it set aside. The chancery court affirmed the conviction by the prison disciplinary board. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, II, JJ., joined.

Grenda Harmer, Hartsville, Tennessee, *Pro se*.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Charlotte Montiel Davis, Assistant Attorney General, Nashville, Tennessee, for the appellees, Commissioner, TN. Dept. of Correction, D. Epley, Tennessee Department of Correction, Turney Center Disciplinary Board, and Warden, Turney Center Industrial Complex-Main.

### MEMORANDUM OPINION[1]

---

[1]Tennessee Court of Appeals Rule 10 provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse, or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

## I. FACTS & PROCEDURAL HISTORY

Grenda Harmer is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). On October 3, 2015, while housed at the Turney Center Industrial Complex ("TCIX"), he received a disciplinary report for the possession of contraband. Harmer was using a computer in the prison library, and an officer allegedly confiscated a USB storage device from the computer containing pornographic material. The disciplinary report states:

> On the above date at approximately 3:20 PM, I [the officer] did find Inmate [Harmer] attempting to cover the computer screen watching a video. At this time I did confiscate a flash drive in the computer he was using. The flash drive was reviewed at operatio[ns] and there were dozens of files of pornographic videos and pictures. Due to the fact that this inmate was the sole operator o[f] the computer and was observed viewing the movies, [Harmer] is written up for pos[s]ession of contraband.

Harmer signed the disciplinary report, acknowledging, "I have been given a copy of this report and have been told about my limited right to remain silent and to be represented by an offender advisor."

The record before us contains a "Disciplinary Report Hearing Summary" dated October 9, 2015. It indicates that Harmer pled guilty to the offense of possession of contraband. Under the section entitled "Preliminary Inquiry," the Hearing Summary contains Harmer's signature and the date of October 9 beside each of the following statements:

> I agree to waive the right to 24-hour notice.

> I agree to waive the right to have the reporting official present.

> I agree to waive the right to call witness(es) on my behalf.

Harmer also signed and dated the next page beneath the following statement: "I fully understand that by entering a plea of guilty to the aforementioned charge(s), I am waiving my right to call witness(es) and present evidence on my behalf, must accept whatever punishment is imposed, and will not be allowed to appeal." Below his signature, the Hearing Summary contains the pre-printed statement, "Attach CR3171 Agreement to Plead Guilty and Waiver of Disciplinary Hearing and Due Process Rights," but no such document was attached. The Hearing Summary reflects that Harmer was represented by an inmate advisor. The disciplinary board chairman signed the Hearing Summary

indicating that Harmer was guilty of possession of contraband based on his guilty plea and the written report. Harmer's punishment consisted of a written warning, a $4 fine, and a nine-month package restriction.

On October 14, 2015, Harmer filed an appeal to the prison warden, alleging that his due process rights were violated in connection with his guilty plea. He claimed that TDOC regulations require an inmate's written waiver of a disciplinary hearing to be signed in the presence of a staff witness, and Harmer claimed that he never appeared before the disciplinary hearing officer or any other staff member on the date of his waiver. Harmer claimed that the disciplinary hearing officer failed to speak with him to ensure that he understood the ramifications of executing the waiver. As a result, Harmer requested that his guilty plea be reversed and vacated. The prison warden affirmed Harmer's conviction upon finding no violation of the disciplinary procedures. The warden also noted that Harmer's signature appeared on the documentation and that he pled guilty to the charge, so he had no appeal rights.

Harmer then filed an appeal to the commissioner of the TDOC. He again argued that his guilty plea was not signed in the presence of a staff member and that the disciplinary board chairman did not attempt to discern whether his plea was voluntary and fully understood. He also argued that the board chairman failed to provide sufficient reasons for the decision on the written hearing summary. The commissioner concurred with the warden's decision and affirmed the conviction upon finding sufficient documentation that Harmer entered a plea of guilty. The commissioner also noted that pursuant to TDOC procedures, only a plea of not guilty can be appealed.

Harmer then filed a petition for common law writ of certiorari in chancery court, alleging that his disciplinary proceeding was conducted in an arbitrary and illegal manner and in violation of his due process rights. Harmer alleged that on October 9, 2015, he was "called to the disciplinary board building" where he "was met by an inmate advisor who advised him that he should plead guilty." According to the petition, Harmer "was then presented with some paperwork by the inmate and told to 'sign here.'" Harmer alleged that this procedure violated TDOC policies because the guilty plea was not signed in the presence of a TDOC staff member but another inmate. Harmer alleged that he did not appear before the disciplinary board hearing officer to discuss the rights he was forfeiting by entering a guilty plea. He also maintained that the disciplinary board hearing officer failed to include sufficient findings of fact and reasons for his decision on the hearing summary. Harmer also filed a brief in which he argued that he was not provided with a fair appeal process because the warden and commissioner "rubber stamped" the disciplinary board chairman's decision without investigating the merits of his arguments.

3

The respondents filed a notice that they did not oppose the granting of the writ. On February 17, 2016, the chancery court issued the writ and directed the respondents to prepare and certify the record of the disciplinary proceeding. The respondents also submitted the affidavit of the disciplinary board chairman who manages all disciplinary hearings at TCIX. The board chairman stated that he "personally read Grenda Harmer [] his rights before he [pled] guilty to possession of contraband [] on October 9, 2015." He stated that Harmer then "signed the CR-1834 [Hearing Summary] form in front of me." In response, Harmer filed an unsworn declaration pursuant to Tennessee Rule of Civil Procedure 72 claiming that the board chairman made false statements in his affidavit. The board chairman filed another affidavit stating, again, that he was present when Harmer pled guilty to possession of contraband on October 9, 2015. The chairman also stated that he "had him sign the CR-1834 [Hearing Summary] form, but not the CR-3171" form that should have been attached to the Hearing Summary form. In response, Harmer argued that his guilty plea was not valid in the absence of a CR-3171 form.

On May 18, 2016, the chancery court entered an order denying the relief requested by Harmer and dismissing the petition. The trial court found that Harmer's punishment, consisting of a written warning, a $4 fine, and a nine-month package restriction, did not implicate due process protection. The court found that the TDOC policies Harmer cited were inapplicable to the particular type of waiver form he signed but that he signed the Hearing Summary form expressly acknowledging that he was waiving his rights. Accordingly, the chancery court concluded that Harmer was not entitled to relief. Harmer timely filed a notice of appeal.

## II. ISSUES PRESENTED

Harmer presents the following issues, as we perceive them, for review on appeal:

1. Whether the disciplinary board chairman violated Harmer's due process rights or acted illegally or arbitrarily by failing to question Harmer about his guilty plea in accordance with TDOC policies;

2. Whether the disciplinary board chairman violated Harmer's due process rights or acted illegally or arbitrarily due to the participation of the inmate advisor;

3. Whether the disciplinary board chairman violated Harmer's due process rights or acted illegally or arbitrarily by failing to include on the Hearing Summary specific findings regarding the evidence or specific reasons for the decision;

4

4.     Whether the prison warden and commissioner of the TDOC failed to provide Harmer with a fair and impartial appeal process in violation of Harmer's due process rights and in an illegal and arbitrary manner.

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

"The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards[.]" *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). By issuing the writ, the reviewing court orders the disciplinary board to file its record so that the court can determine whether the petitioner is entitled to relief. *Id.* The scope of review is limited to "whether the disciplinary board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." *Id.* (citing *Turner v. Tenn. Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *South v. Tenn. Bd. of Paroles*, 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996)).

## IV. DISCUSSION

### A.    Due Process

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Accordingly, the first step in analyzing a claim of a denial of due process is "whether the interest involved can be defined as 'life,' 'liberty' or 'property' within the meaning of the Due Process Clause." *Willis*, 113 S.W.3d at 711. "Deprivation of an interest which is neither liberty nor property does not trigger the procedural safeguards of the Due Process Clause." *Id.*

The United States Supreme Court has specifically addressed the issue of when a prisoner is deemed to have been deprived of a liberty interest. The Court recognized that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Accordingly, "a liberty interest is not created unless the disciplinary restraints being imposed on a prisoner are atypical in comparison to the 'ordinary incidents of prison life.'" *Willis*, 113 S.W.3d at 711 (quoting *Sandin*, 515 U.S. at 483-84).

5

For example, in *Sandin*, the Supreme Court held that discipline consisting of thirty days of punitive segregation was not a dramatic departure from the basic conditions of the prisoner's sentence, and therefore, the prisoner was not entitled to due process protection. *Id.* In the case before us, Harmer was punished with a written warning, a $4 fine, and a nine-month package restriction. Tennessee courts have held that similar restrictions on privileges and small fines do not impose a significant enough hardship to trigger due process concerns. *See, e.g.*, *Walton v. Tenn. Dep't of Corr.*, No. W2015-01336-COA-R3-CV, 2016 WL 3078838, at *7 (Tenn. Ct. App. May 23, 2016), *perm. app. denied* (Tenn. Oct. 21, 2016) (holding that a $4 fine and loss of visitation privileges for three months were not atypical or significant enough to trigger due process concerns); *Bonner v. Cagle*, No. W2015-01609-COA-R3-CV, 2016 WL 97648, at *6 (Tenn. Ct. App. Jan. 7, 2016) (*no perm. app. filed*) (concluding that a $4 fine, three months of visitation cancellation and nine months of package restriction were not sufficient punishments to implicate due process protection); *Patterson v. Tenn. Dep't of Corr.*, No. W2009-01733-COA-R3-CV, 2010 WL 1565535, at *3 (Tenn. Ct. App. Apr. 20, 2010) (holding that a twelve month package restriction was insufficient); *Anglin v. Turner*, No. E2006-01764-COA-R3-CV, 2007 WL 914708, at *3 (Tenn. Ct. App. Mar. 28, 2007) (finding a six month limit on visitors and packages was not sufficiently harsh to be atypical or a significant hardship); *Buford v. Tenn. Dep't of Corr.*, No. M1998-00157-COA-R3-CV, 1999 WL 1015672, at *5 (Tenn. Ct. App. Nov. 10, 1999) (holding that a $4 fine and four-month package restriction did not violate inmate's due process rights).

State prisoners in Tennessee do have a property interest in the funds in their prison trust fund accounts. *Willis*, 113 S.W.3d at 711 (citing *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 872 (Tenn. Ct. App. 2002)). However, the relative weight of the property interest is relevant to the extent of due process to which one is entitled. *Id.* at 712. "[W]here the interest is truly de minimis, procedural rights can be dispensed with altogether." *Id.* at 712. *Willis* involved a fine of five dollars to be paid from the inmate's prison trust account. *Id.* The court determined that the government's interests in avoiding fiscal and administrative burdens of additional process "outweigh[ed] the petitioner's interest in his five dollars." *Id.* The court concluded that the prisoner failed to state a claim for violation of his due process rights, stating, "The de minimis nature of the fine makes it immune from procedural due process requirements." *Id.*

We likewise conclude that the punishment imposed in this case – a written warning, $4 fine, and nine-month package restriction – was not sufficient to implicate due process protection.

6

## B.    *Procedural Issues*

"The TDOC has established Uniform Disciplinary Procedures which govern disciplinary matters in state prisons." *Mandela v. Campbell*, 978 S.W.2d 531, 532 (Tenn. 1998).    "The Uniform Disciplinary Procedures exist '[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates.'" *Willis*, 113 S.W.3d at 713 (quoting TDOC Policy No. 502.01(II)).    Deviations from the policies will warrant dismissal of the disciplinary offense if the prisoner demonstrates substantial prejudice as a result and that the error would have affected the disposition of the case.    *Id.* (citing TDOC Policy No. 502.01(V)).    "To trigger judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing." *Jeffries*, 108 S.W.3d at 873.    Minor deviations that "do not prejudice the prisoner do not require dismissal of the disciplinary offense." *Id.*

Harmer contends that the disciplinary board acted illegally and arbitrarily in violation of the Uniform Disciplinary Procedures because the board chairperson allegedly failed to question him about his guilty plea and failed to have him sign the correct form, his inmate advisor participated in the process, and he was not afforded an appeal to the warden or commissioner.    These issues require us to examine the relevant provisions of the Uniform Disciplinary Procedures addressing an inmate's waiver of a formal disciplinary hearing:

K. Waiver of Due Process

An inmate will be given the option to waive the right to a formal disciplinary hearing and due process.

1. An Agreement to Plead Guilty and Waiver of Disciplinary Hearing and Due Process Rights, CR-3171, will be made available to inmates receiving a formal disciplinary report. The location(s) of the form will be designated by the Warden/designee and easily accessible to all inmates.

2. If the inmate wishes to exercise the waiver provided by this agreement form, he/she will sign the form in the presence of a staff witness (other than the reporting official) who will also sign the form. If the inmate is under the age of 18 or has been declared mentally incompetent by a qualified mental health professional, an advisor shall be appointed to assist the inmate. The form will be attached to the disciplinary report and forwarded to the disciplinary board chairperson who will sign and date the form. The form must be completed within two working days after the issuance of the

disciplinary report.

3. The inmate will waive the following rights when signing this agreement:
a. To personally appear before the disciplinary board or hearing officer
b. To plead not guilty and to have the case against him/her proven by a preponderance of the evidence presented
c. To present his/her own version of the facts
d. To call witnesses in his/her own behalf
e. To cross-examine his/her accuser and hostile witnesses
f. To appeal the decision of the disciplinary board/hearing officer and the punishment imposed.
g. When an inmate has agreed to waive his/her due process rights and plead guilty, the disciplinary hearing officer shall question the inmate to ensure that the inmate's actions are voluntary and that he/she fully understands that by waiving a disciplinary hearing and all due process rights he/she must accept the punishment imposed and cannot appeal.
h. Within five working days, the disciplinary board/hearing officer shall impose sanctions.
. . . .
k. A copy of CR-3171 will be attached to and distributed with a copy of the Disciplinary (LIBK) screen/CR-1834.

L. The Disciplinary Hearing
. . . .

2. The inmate who is charged with the rule infraction(s) shall have the right to appear in person before the board/hearing officer at all times, except:
. . . .
d. When the inmate signs an agreement to plead guilty.

. . . .

4. The disciplinary hearing shall be conducted pursuant to the following procedures:
a. The board chairperson/hearing officer shall make the following inquiries (the answer(s) to which shall be stated in the findings of the board):

(1) Whether the inmate waived the 24-hour notice
(2) Whether the inmate waived the right to have the reporting officer present
(3) Whether the inmate waived the right to call a witness(es) in his/her

behalf

(4) Whether the inmate was provided with a copy of the disciplinary report and when it was provided

(5) Whether any inmate entering a plea of guilty has been advised and understands that by so doing, he/she is waiving the right to call witness(es) on his/her behalf, to cross examine his/her accuser and any hostile witnesses, to review any adverse documentary evidence presented, and to have the case against him/her proven by a preponderance of the evidence.

(6) Whether the inmate is represented by an inmate or staff advisor, the name of the advisor, and whether the inmate has had adequate time to consult with the advisor; and if not represented by an advisor, whether he/she waives such representation.

(7) Whether the hearing has been continued previously and if so, at whose request and for how long.

(8) Whether the inmate has been held in segregation, or in any more restricted status than that which he/she was in when charged, pending the hearing; and if so, for how long.

(9) Whether any inmate entering a plea of guilty was advised that the decision of the board/hearing officer shall not be appealable, including any punishment imposed by the board/hearing officer. The inmate shall sign in the appropriate space on CR-1834 his/her understanding and acceptance of this no appeal provision.

TDOC Policy No. 502.01(VI)(K)-(L).

Harmer's first contention is that the board chairman violated these policies by failing to question him about his guilty plea. For instance, TDOC policy 502.01(VI)(K)(3)(g) required the chairman to "question the inmate to ensure that the inmate's actions are voluntary and that he/she fully understands that by waiving a disciplinary hearing and all due process rights he/she must accept the punishment imposed and cannot appeal." The board chairman filed two affidavits in the chancery court stating that he "personally read Grenda Harmer [] his rights before he plead guilty to possession of contraband [] on October 9, 2015," then Harmer "signed the CR-1834 [Hearing Summary] form in front of me." Harmer filed an unsworn declaration stating that the board chairman made false statements in his affidavit, but Harmer did not affirmatively state in his declaration what actually occurred. The board chairman then filed another affidavit again stating that he was present when Harmer pled guilty to possession of contraband on October 9, 2015, and that the chairman "had him sign the CR-1834 form." Putting this factual disagreement aside, however, we conclude that Harmer is not entitled to relief even assuming for the sake of argument that the board chairman failed to verbally question him.

The "Disciplinary Report Hearing Summary," form CR-1834, was signed by Harmer and by the board chairman on October 9, 2015. Harmer signed the document in four separate locations, indicating with each signature that he agreed to waive his right to 24-hour notice, his right to have the reporting official present, and his right to call witnesses on his behalf, and acknowledging, "I fully understand that by entering a plea of guilty to the aforementioned charge(s), I am waiving my right to call witness(es) and present evidence on my behalf, must accept whatever punishment is imposed, and will not be allowed to appeal." These are the same points listed in the aforementioned policy about which the chairman would have questioned him. The board chairman signed the Hearing Summary containing Harmer's declarations on these points. Harmer does not claim that he did not understand this language or his rights when he signed the CR-1834 four times or that he would have proceeded differently if the board chairman had questioned him. He simply claims that his waiver is automatically invalid if the board chairman did not verbally question him about it. We disagree. Without a showing of substantial prejudice that affected the disposition of the case, dismissal of the offense is unwarranted. *See Willis*, 113 S.W.3d at 713.

Next, Harmer suggests that his guilty plea is invalid because he signed a CR-1834 form but not a CR-3171 form. The Uniform Disciplinary Procedures quoted above contemplate that the inmate will sign a CR-3171 form, which "will be attached to the disciplinary report and forwarded to the disciplinary board chairperson." TDOC Policy No. 502.01(VI)(K)(2). In the section of the CR-1834 Hearing Summary form for inmates who plead guilty, it states, "Attach CR3171 Agreement to Plead Guilty and Waiver of Disciplinary Hearing and Due Process Rights." Here, Harmer signed the CR-1834 Hearing Summary form but not the separate attachment designated CR-3171. Again, however, we discern no substantial prejudice to Harmer due to this omission. The record before us contains a blank CR-3171 form. It states:

> I admit I violated the above listed rule(s) and agree to plead guilty and accept whatever punishment the disciplinary board may impose. In making this agreement, I understand that I am waiving the following rights:
>
> 1. The right to personally appear before the disciplinary board
> 2. The right to plead not guilty and to have the case against me proven by a preponderance of evidence.
> 3. The right to present my own version of the facts.
> 4. The right to call witnesses in my own behalf.
>
> I am signing this agreement of my own free will and under no threat or coercion to do so. I understand that by signing this agreement, I must accept whatever punishment the disciplinary board may impose and will

not be allowed to appeal.

Again, these are substantially the same affirmations contained in the CR-1834 Hearing Summary form that Harmer signed four times, wherein he acknowledged, "I fully understand that by entering a plea of guilty to the aforementioned charge(s), I am waiving my right to call witness(es) and present evidence on my behalf, must accept whatever punishment is imposed, and will not be allowed to appeal." Harmer does not suggest that this document would have informed him about any right of which he was unaware or that he would have declined to plead guilty if a staff member had presented this document to him. He simply claims that no guilty plea can be valid without this document. Without a showing of substantial prejudice that affected the outcome, however, we find no basis for dismissing his offense.

The next issue raised by Harmer is whether the board acted illegally or arbitrarily in connection with the participation of the inmate advisor. The Uniform Disciplinary Procedures define inmate advisors as "[i]nmates appointed by the Warden who serve as advocates for inmates who have been charged with disciplinary infractions." TDOC Policy No. 502.01(IV)(G). In Harmer's petition for writ of certiorari, he stated: "Upon arriving at the disciplinary board office, Mr. Harmer was met by an inmate advisor who advised him that he should plead guilty. Mr. Harmer was then presented with some paperwork by the inmate and told to 'sign here.'" In his brief on appeal, he frames the issue as whether the board chairman impermissibly "permitted inmate advisor John M[.] to require Harmer to sign a Summary Report CR-1834 form in violation of TDOC Policy No. 505.07 (VI)(F)(1),(2), and (3)(k)." The record of the disciplinary proceeding contains nothing to confirm the extent of the participation of Harmer's inmate advisor. Moreover, the policy that Harmer claims was violated is not included in the record on appeal and is not part of the Uniform Disciplinary Procedures. Accordingly, Harmer is not entitled to relief regarding this issue. *See Snow v. Turney Ctr. Disciplinary Bd.*, No. M2016-01148-COA-R3-CV, 2016 WL 7409846, at *7-9 (Tenn. Ct. App. Dec. 22, 2016), *perm. app. pending* (declining to consider an alleged violation of TDOC and TCIX policy 506.06 governing cell searches as the policy was not part of the Uniform Disciplinary Procedures and did not pertain to the administrative proceedings).

We also reject Harmer's assertion that the prison warden and TDOC commissioner illegally and arbitrarily failed to provide him with a fair and impartial appeals process. Harmer pled guilty and signed the CR-1834 form stating, "I fully understand that by entering a plea of guilty to the aforementioned charge(s), I am waiving my right to call witness(es) and present evidence on my behalf, must accept whatever punishment is imposed, *and will not be allowed to appeal.*" (Emphasis added.) The warden and commissioner did not act illegally or arbitrarily or in violation of the Uniform Disciplinary Procedures in recognizing Harmer's express written waiver of the right to

appeal.

Finally, Harmer argues that the board chairman acted illegally and arbitrarily in completing the Hearing Summary form by failing to reference the flash drive as evidence, failing to enter specific findings of fact regarding the evidence that supported the finding of guilt, and failing to include a detailed statement of reasons supporting his decision. We discern no merit in this issue. The Uniform Disciplinary Procedures provide that within five working days after the conclusion of a disciplinary hearing, the hearing officer "shall render a CR-1834 [form] . . . [s]tating detailed reasons for the . . . decision and summarizing the evidence which led to such decision." TDOC Policy No. 502.01(VI)(L)(4)(n). In Harmer's case, the CR-1834 Hearing Summary states:

> STATEMENT OF ACCUSED: Guilty Plea
>
> DESCRIPTION OF PHYSICAL EVIDENCE INTRODUCED: . . . Written Report
>
> FINDINGS OF FACT AND SPECIFIC EVIDENCE RELIED UPON TO SUPPORT THOSE FINDINGS: Guilty Based on Report and Plea

Because Harmer pled guilty to the charge of possession of contraband, he waived his rights "to a formal disciplinary hearing" and "to have the case against him[] proven by a preponderance of the evidence presented." TDOC Policy No. 502.01(VI)(K), (K)(3)(b). Even so, the CR-1834 form contains sufficient reasons for the chairman's decision, and Harmer has not demonstrated that the failure to include more specific information substantially prejudiced him in such a way that dismissal of the charges is warranted. *See Eremity v. Little*, No. M2009-01275-COA-R3-CV, 2009 WL 4980254, at *3 (Tenn. Ct. App. Dec. 22, 2009) (concluding that an inmate "failed to show any prejudice as a result of any perceived deficiency in the information contained on the form"); *Ross v. Tenn. Dep't of Corr.*, No. W2008-00422-COA-R3-CV, 2008 WL 4756873, at *8 (Tenn. Ct. App. Oct. 30, 2008) (finding a minor deviation and no prejudice where the written finding simply stated "preponderance of evidence" but other forms contained more information); *Pirtle v. Tenn. Dep't of Corr.*, No. W2006-01220-COA-R3-CV, 2007 WL 241027, at *5 (Tenn. Ct. App. Jan. 30, 2007) (finding no prejudice by the lack of detail in the summary). Harmer is not entitled to relief based on this issue.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the

appellant, Grenda Harmer.  Because appellant is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____

BRANDON O. GIBSON, JUDGE